THE COUNTY OF COOK, Appellant and Cross-Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Marty William Witcoff, Appellee and Cross-
Appellant).

First District (Industrial Commission Division)   No. 1—86—0413WC

Opinion filed August 26, 1987.

Ivan M. Rittenberg, of Rittenberg & Buffin, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Dennis J. DePrato, Assistant State's Attorney, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

This case involves a cross-appeal from an order of the Commission, confirmed by the circuit court, denying additional penalties and attorney fees under sections 19(k) and 16 of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 138.19(k), 138.16). The underlying appeal by the employer from the Commission order was settled between the parties and dismissed by prior order of this court. The issue is whether the Commission erred in failing to award additional penalties and fees because of the unreasonable refusal of the employer to pay any benefits in contravention of its statutory duty.

The facts are straightforward. On February 24, 1983, claimant, an off-duty deputy sheriff with the Cook County Department of Corrections, Sheriff's Department, was dining in a Chicago restaurant. Two men entered the restaurant with a dog, demanding service which the waitress refused because of the presence of the dog. The men refused to leave. Claimant came to the aid of the waitress, identified himself as a police officer, and escorted the two men from the restaurant. They resisted and one man punched claimant in his left eye. That individual was arrested by Chicago police officers.

Claimant received emergency treatment for a corneal abrasion. Subsequent treatment was rendered by Dr. Kohn, an opthalmologist, who medicated and bandaged the eye. Claimant's eye injury substantially healed by April 1, 1983, although claimant was required to continue eye drops and occasionally suffered minor flare-ups of disability to the eye. In addition, one week after the assault claimant began suffering severe headaches and was referred by Kohn to Dr. Glassenberg, a neurologist. For 11 months, Glassenberg prescribed a variety of medication and muscle relaxants for claimant's headaches. Eventually they subsided and claimant was released to return to duty in February of 1984.

Claimant testified that on February 25, 1983, he called respondent's chief security officer, Ruiz, and notified him of his injury. He also claimed he called one of his shift commanders, Nelson, on March 2, 1983, to explain his absence. He stated he mailed copies of the police report to Jean Dolan, safety coordinator for respondent, two to three weeks after his injury. He also made a telephone call to Dolan in which he told her he was involved in a duty injury. He asked that she mail accident forms to him because he was too ill or medicated to travel to the office. In response, Dolan allegedly told claimant he had to come to the office to fill out the reports and refused to mail him forms. On his return to work, claimant was reinstated to duty, al-

though he was refused status as a deputy sheriff allegedly because of unspecified mental problems. Although he filled out the accident forms, the department refused to pay benefits to him.

Claimant denied having any prior eye problems or headaches and denied any accident occurring after he was punched in the eye in February 1983. Claimant was required to call the duty officer every day to explain his absence from work. The department never asked him to return to work. No department doctor ever examined him. Claimant acknowledged receiving a reprimand in 1982 for conduct unbecoming an officer when he verbally abused hospital personnel for giving metal silverware to a prisoner in his charge. He claimed, however, the charges were false and had not been proved. Claimant also stated he did not apply for duty-related disability benefits because he did not know they existed.

Jean Dolan, safety coordinator, processed all duty injury claims for respondent. She insisted the first report she had of any duty accident involving claimant was February 7, 1984, when the State's Attorney's office made an inquiry of her. Claimant later came into the office that day and filled out the reports. At that time claimant also gave her police reports and certain medical bills which she forwarded to the committee which made recommendations concerning temporary total disability payments. Dolan also acknowledged that in June of 1983 an inquiry was made by a supervisory officer as to claimant's status. At the time, Dolan ascertained claimant had not filed for disability with the pension board. She also stated that if an officer suffered a duty injury and was hospitalized or bedridden, she would personally go to his location to have him fill out the reports. She stated, however, this situation had never arisen. Dolan acknowledged receiving a bill from Dr. Kohn in August 1983, which she returned because she did not know claimant's injury was duty-related.

On cross-examination, Dolan was confronted with petitioner's exhibit No. 17, which included various documents, medical bills, and a health insurance claim form. All related to claimant and were prominently denominated as workers' compensation matters. All were stamped "Received by the Department of Corrections March 9, 1983." Dolan maintained she never received the documents. Also admitted were copies of letters and bills sent from various doctors to the department from March through September 1983. Dolan maintained she never received any of these documents either, although they would normally be routed to her.

Russell Nelson, chief of security, denied having any conversations with claimant. He also stated claimant was aware of a department

regulation requiring submission of a written report of the accident. On cross-examination, Nelson admitted he did not know if claimant had called Officer Ruiz and further admitted that since Nelson only works the night shift, claimant might not have been under his direct command prior to 1984. Documentary reports showing claimant was officially reprimanded for unbecoming conduct were admitted.

The deposition of Dr. Glassenberg, the neurologist, was admitted. Glassenberg initially saw claimant on April 7, 1983, for severe headaches. Claimant related that he had been beaten up by three youths in January of 1983, with injuries to his shoulder, neck, and nose. Claimant also suffered headaches. Due to the punch in the eye in February, claimant temporarily lost his eyesight, saw "light flashes" and suffered daily, constant headaches. Glassenberg diagnosed claimant's headaches as "migraine syndrome" and believed the flashes were the result of these headaches. It was Glassenberg's opinion that although claimant had headaches after his January injury, most of that condition had been resolved by the time of the second assault in February when further disability was suffered. It was also Glassenberg's opinion trauma to the eye can cause both an injured cornea and can cause muscle tightness and contribute to migraine headaches.

The deposition of Dr. Kohn revealed he treated claimant initially on February 25, 1983. Upon prescribing a course of antibiotic drops and bandages, claimant's eye gradually healed and treatment for the eye was discontinued on April 1, 1983. Because of the recurring headaches, Kohn referred claimant to Glassenberg. Kohn testified the corneal abrasion which claimant suffered involved 50% to 60% of claimant's left eye and was considered to be a large abrasion. It was Kohn's opinion a punch to the eye could cause corneal abrasion and pain in the head as well as the eye. It was also possible claimant's eye condition could recur spontaneously anywhere from six months to one year after the initial injury.

At no time prior to or after claimant's return to work in February 1984 did respondent pay any temporary total benefits. Because of this failure, claimant filed a petition for penalties and attorney fees under sections 19(l), 19(k), and 16 of the Act with the arbitrator.

The arbitrator awarded temporary total benefits of $247.53 per week for a period of 49⁴/₇ weeks and medicals in the amount of $1,630.91. Respondent was also ordered to pay the sum of $2,500 under section 19(l) and $3,280.27 in attorney fees under section 16 of the Act for failure to pay temporary total disability. The arbitrator made a further finding that this failure "was the result of lack of communication between respondent's employees as to the fact of peti-

tioner's accident and medical bills incurred as a result thereof." The arbitrator also recited that although claimant had presented sufficient evidence in support of his claims and respondent presented no evidence to the contrary, it had continued to refuse payment of any benefits to claimant. Nevertheless, the arbitrator made no mention of and did not award additional section 19(k) penalties or attorney fees.

Respondent petitioned for review before the Commission and claimant renewed his motion for additional penalties. In support, claimant maintained respondent's failure to pay compensation after the arbitrator's award was in clear defiance of the law and respondent's petition for review was frivolous. Before the Commission no additional evidence was presented. The Commission affirmed the decision of the arbitrator in all respects. However, the Commission denied additional compensation under section 19(k) because the claimant introduced no evidence showing respondent's conduct was unreasonable or vexatious. The circuit court confirmed the Commission. As we have indicated, respondent filed a timely notice of appeal and claimant cross-appealed. The underlying appeal was dismissed upon settlement. Only the cross-appeal remains.

■ Claimant maintains the Commission's decision denying additional penalties and attorney fees is improper because the Commission improperly shifted the burden of proof to him to prove the delay was unreasonable or vexatious. We agree. As claimant correctly points out, the law is well settled. Where a delay has occurred in payment of compensation benefits, the employer bears the burden of justifying the delay. *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 442 N.E.2d 861; *Ford Motor Co. v. Industrial Com.* (1986), 140 Ill. App. 3d 401, 488 N.E.2d 1296.

Section 19(k) provides:

> "In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(k).)

The additional penalty sections are intended to prevent bad-faith and unreasonable withholding of compensation benefits from injured work-

ers. The supreme court has said since obviously many claims and awards can be challenged in the legitimate hope that the reviewing tribunal will view the evidence in a way favorable enough to the employer to reduce or rule out his liability, Illinois courts have refused to assess penalties where the evidence indicates the employer reasonably could have believed that the employee was not entitled to withheld compensation and the standard is one of objective reasonableness in his belief. Thus, it is not good enough merely to assert honest belief that the employee's claim is invalid or that his award is not supported by the evidence; the employer's belief is "honest" only if the facts which a reasonable person in the employer's position would have would justify it. *Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 442 N.E.2d 861.

■ In defense, respondent claims payments were validly withheld because there was a legitimate issue as to whether respondent received notice of the injury. We disagree. Even if one accepts the arbitrator's initial finding that no payments were made during the period of disability because of a bureaucratic mix-up within the Cook County Department of Corrections, once respondent was presented with unrebutted evidence that notice of the injury was communicated to the department as early as March 9, 1983, any possible dispute over the issue of notice was concluded. A continued failure to pay benefits on this basis was unreasonable.

Respondent also contends there is a legitimate question of causal connection. While an employer's reliance upon qualified medical opinion may preclude the imposition of additional penalties, in this case, no such medical opinion exists. In the first instance, respondent presented no medical testimony refuting claimant's expert testimony. Furthermore, both of claimant's treating physicians testified there was a causal connection between the punch to the eye and the initial corneal abrasion and subsequent headaches which claimant suffered.

Respondent, nevertheless, maintains testimony supports an inference that claimant's problems arose from a prior injury. This statement ignores the testimony of both treating physicians that any prior injury had probably resolved itself by the time of the February accident and, at the very least, the February assault exacerbated whatever condition claimant may have been suffering from at the time.

Respondent makes the further claim there were legitimate questions raised concerning the severity or duration of claimant's injury. It points to Dr. Glassenberg's testimony to the effect claimant had no eye problem when Glassenberg first saw him in April of 1983. This argument ignores the testimony of Dr. Kohn that claimant's eye prob-

lem had resolved itself at least one week prior to claimant's first visit to Glassenberg. Furthermore, there is no evidence claimant's headaches did not continue until January of 1984, when a new medication given him by Glassenberg relieved his symptoms.

Although respondent maintains migraine syndrome is not traumatically induced, there is no evidence to support that contention of record in this case. To the contrary, Dr. Glassenberg clearly testified on cross-examination claimant's state of ill-health was compatible with being punched in the eye, and trauma to the head or eye can cause muscle tightness and contribute to migraine headaches.

■■ Finally, respondent points to various "lies" told by claimant, arguing they prove the injury was not duty related. These issues relate to alleged conversations claimant maintained he had with personnel from the department. These claimed contacts were all denied by the two witnesses respondent presented. Whether these conversations, in fact, occurred was a matter of credibility for the Commission to determine. Moreover, any conflicts in the testimony in this regard pales in significance to the substantial evidence presented by claimant that the injury arose out of and in the course of employment and was causally related to that employment. The police report and claimant's own testimony are unrebutted. He suffered injury attempting to thwart an altercation after identifying himself as a police officer. The injury was duty related.

Section 19(k) of the Act states the failure to pay section 8 compensation shall be deemed to be unreasonable. Here, respondent was presented with clear proof of liability no later than the close of proof at the arbitration hearing in early July of 1984. It presented no substantial adverse evidence, except as to notice, at arbitration and no additional evidence before the Commission. The continued refusal to pay any benefits not only after the arbitration hearing but after the arbitrator's decision was rendered and an award made was unreasonable.

Accordingly, the judgment of the Cook County circuit court and the order of the Commission are reversed insofar as they fail to award penalties and attorney fees under sections 19(k) and 16 of the Act. The cause is remanded to the Commission for further proceedings to determine the amount of those penalties and fees.

Reversed and remanded to the Commission with directions.

BARRY, P.J., and KASSERMAN, McNAMARA, and WOODWARD, JJ., concur.