BUSINESS AND PROFESSIONAL PEOPLE FOR THE PUBLIC INTEREST, Plaintiff-Appellant, v. TERRENCE BARNICH, Defendant-Appellee.

First District (3rd Division) No. 1—92—2787

Opinion filed March 31, 1993.

Howard A. Learner, of Chicago (Patricia M. Logue, of counsel), for appellant.

Stamos & Trucco, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

One of the plaintiffs, Business and Professional People for the Public Interest (BPI), appeals from an order denying plaintiffs' motion for preliminary injunction and dismissing with prejudice plaintiffs' first amended verified petition and complaint for writ of *mandamus*, writ of prohibition, injunction, and further equitable relief. BPI argues on appeal that: (1) the complaint stated a cause of action; (2) there was an appearance of impropriety caused by the numerous telephone calls made by defendant, Terrence Barnich, who was a commissioner of the Illinois Commerce Commission (ICC), to Commonwealth Edison (Edison) lawyers, lobbyists and officials; and (3) plaintiffs were entitled to preliminary injunctive relief disqualifying defendant from Edison rate proceedings based on defendant's failure to recuse himself.

The following plaintiffs filed the complaint, along with BPI: Citizens Utility Board, the Labor Coalition on Public Utilities, National Peoples Action Community Action for Fair Utility Practice, South Austin Coalition Community Council, Northwest Austin Council, Action Coalition of Englewood, Chicago South Community Development Organization, and Logan Square Neighborhood Organization. The complaint requested that defendant recuse himself from pending rate proceedings involving a proposed Edison rate increase and that he be enjoined from participating further in those rate proceedings.

The complaint alleged the following. Plaintiffs were parties in the Edison rate proceedings. BPI was a not-for-profit organization that represented Northern Illinois electricity consumers in Edison rate proceedings. Plaintiff Citizens Utility Board was a statutorily created organization. The other plaintiffs were not-for-profit organizations. The ICC was a seven-member administrative agency that set rates for utilities, including Edison. Defendant was an ICC commissioner since 1989.

The pending Edison remand case was the ICC's third attempt since 1987 to set lawful electricity rates for Edison. Ratemaking proceedings were contested cases requiring the ICC to resolve questions of fact and law. Defendant acted in a judicial or quasi-judicial capacity in these rate proceedings. From December 1989 through the first nine months of 1991, during the pendency of early stages of the Edison remand case, more than 375 telephone calls were placed from defendant's personal office telephone to the telephones of paid Edison representatives. The Edison representatives telephoned included: (1) an attorney for the law firm that performed legal and lobbying services for Edison; (2) a registered lobbyist for Edison who was also an attorney at the same law firm; (3) a consulting firm managed by a former ICC chairman; (4) an Edison employee who was Edison's director of regulatory affairs during 1990 and 1991; (5) Edison's chairman of the board; and (6) Edison's vice-president.

Petitions for rehearing had been filed by the ICC and Edison seeking to free Edison from a pledge to refund the illegal increase after a December 1989 Illinois Supreme Court opinion. In May 1990, the Illinois Supreme Court issued a modified opinion directing that the refund be paid and remanded the case to the ICC. In April 1990, Edison filed a new rate increase request. During the period from December 1989 through May 1990, 116 telephone calls were made from defendant's personal office telephone to various Edison representatives.

In June 1990, the ICC resumed jurisdiction over the remanded case. Final orders were issued on March 8, 1991. The ICC voted to grant Edison a large rate increase. From June 1990 through March 8, 1991, at least 148 telephone calls were made from defendant's personal office telephone to various Edison representatives.

The complaint further alleged the following. Plaintiffs pursued a stay and appeal of the March 8, 1991, order. Oral argument was heard by the Illinois Supreme Court on April 25, 1991. During this period, at least 28 telephone calls were made from defendant's personal office telephone to various Edison representatives.

On June 25, 1991, the Illinois Supreme Court heard argument on another Edison case, and on July 15, 1991, the appellate court ruled on another contested Edison rate order. From April 26, 1991, through September 12, 1991, at least 97 telephone calls were made from defendant's personal office telephone to various Edison representatives.

The March 8, 1991, orders were reversed by the Illinois Supreme Court on December 16, 1991, and on February 10, 1992, the case was remanded to the ICC. In press stories following the revelation of these telephone records, defendant was quoted as having made these telephone calls and as being best friends with three of the Edison representatives telephoned. Defendant failed in his duty to maintain a favorable public impression of impartiality.

On March 3, 1992, plaintiffs filed a motion to have defendant recuse himself and refrain from participating in the rate proceedings. Defendant never responded to the motion and continued to participate in ICC meetings. Therefore, he constructively denied the motion. On March 27, 1992, plaintiffs filed a motion to have the ICC recuse defendant from participating in the proceedings. The ICC issued an order denying the motion on the ground of lack of jurisdiction to recuse a fellow commissioner.

The ICC stated its intention to issue a final order in the remand case on or before January 11, 1993. Recusal was required because of the appearance of impropriety and bias if not actual impropriety and bias arising from the telephone calls. Recusal was further required because of defendant's admitted close personal relationship with Edison representatives to whom telephone calls were placed. Recusal was further required because of defendant's failure to put on the record the substance of the conversations, in violation of section 10—103 of the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111⅔, par. 10—103). Plaintiffs were prejudiced by defendant's participation in the proceedings. Plaintiffs sought a writ of *mandamus* compelling defendant to recuse himself from the Edison remand case.

Count II sought a writ of prohibition prohibiting defendant from continuing to participate in the Edison remand case. Count III sought injunctive relief against defendant's continued participation.

Plaintiffs filed an emergency motion for a temporary restraining order to enjoin defendant from participating in a scheduled June 24, 1992, ruling by the ICC and in any other deliberations in connection with two ICC dockets. The motion was denied on June 23, 1992.

Plaintiffs filed a first amended verified petition and complaint. Among the new allegations was that defendant's recusal was required

by the ICC's regulations that set forth standards of behavior for commissioners.

Pursuant to defendant's motion to dismiss, the trial court dismissed the complaint with prejudice on the basis that plaintiffs failed to state a cause of action.

BPI first argues on appeal that the complaint stated a cause of action because defendant had the duty to recuse himself based on his conduct that caused at least an appearance of impropriety. Specifically, BPI argues that: (1) judicial conduct principles on avoiding impropriety governed defendant's conduct as a commissioner; (2) a prime objective of the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.*) was to instill consumer confidence in the ratemaking process; (3) defendant placed numerous telephone calls to attorneys, officers, and lobbyists of a litigant during the pendency of a case; (4) defendant failed to disclose these *ex parte* communications in violation of the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—103) and the Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1015); (5) defendant's conduct violated the ICC's regulations on standards of behavior (83 Ill. Adm. Code §§100.10 through 100.40 (1985)); and (6) actual bias did not have to be shown before disqualification was ordered.

Defendant argues the following in response. His position was not analogous to a judge because the ICC becomes a party opponent of one party and a coappellee of another party when its decisions are appealed so that the ICC was Edison's colitigant against plaintiffs on appeal. BPI failed to cite any civil authority that authorized recusal for the alleged appearance of partiality, for alleged *ex parte* communications, or for actual bias, prior to appeal from the adjudicative officer's decision. Cases on which BPI relied were distinguishable on the basis that they involved situations of personal interest of agency members in the outcome of proceedings. Prejudice must be shown before reversing an agency's decision because of improper *ex parte* contacts. It was possible that all defendant's telephone calls were authorized or even required by the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—101 (ICC is to have general supervision of public utilities)).

■ In addition to case law, BPI relies upon the following authority. Supreme Court Rule 62 directs that a judge should avoid both impropriety and the appearance of impropriety. (134 Ill. 2d R. 62.) Supreme Court Rule 63 obligates a judge to disqualify himself in a proceeding in which his impartiality might reasonably be questioned. (134 Ill. 2d R. 63.) Supreme Court Rule 63 prohibits *ex parte* commun-

ications concerning a pending or impending proceeding. 134 Ill. 2d R. 63.

■ Section 15 of the Administrative Procedure Act prohibited agency members, employees and hearing examiners, after notice of hearing in a contested case, from communicating with any person or party in connection with any issue of fact or with any party or his representative in connection with any other issue, except upon notice and opportunity for all parties to participate. (Ill. Rev. Stat. 1989, ch. 127, par. 1015.) Section 10—103 of the Public Utilities Act states that section 15 of the Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1015) applies to ICC proceedings, with an exception for certain ICC employees and functions. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—103.) The section further provides that a commissioner, who is involved in the decisional process of a proceeding and who makes a prohibited communication, shall place on the public record any such written communication and memoranda stating the substance of any such oral communication. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—103.) In the event of a violation, the ICC or a presiding commissioner was to ensure that the violation did not prejudice any party or adversely affect the fairness of the proceedings. Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—103.

■ ICC regulations require ICC employees to avoid situations that might result in actual or apparent misconduct or conflict of interest and to avoid actions that might result in or create the appearance of giving preferential treatment to any interested party, of losing complete impartiality, of discussing impending decisions outside office channels, and of affecting adversely the confidence of the public in the ICC's integrity. 83 Ill. Adm. Code §100.20 (1985).

■ In interpreting the supreme court rules on judicial conduct, one court has held that the appearance of bias or prejudice can be as damaging to the public confidence as actual bias or prejudice. (*People v. Bradshaw* (1988), 171 Ill. App. 3d 971, 976, 525 N.E.2d 1098.) Inherent in the rules is the concept that a judge who has a personal interest in a case cannot act fairly in that case. The principle of jurisprudence that one with a personal interest in the subject matter of decision in a case may not act as judge in that case is applicable not just to judges but to administrative agents, commissioners, referees, masters in chancery, or other arbiters of questions of law or fact not holding judicial office. (*In re Heirich* (1956), 10 Ill. 2d 357, 384, 140 N.E.2d 825.) A duty to recuse oneself has been applied to an arbiter of facts or law in an adversary proceeding who had a financial interest in the subject matter. *Heirich*, 10 Ill. 2d at 385.

■ On the basis that defendant was a commissioner whose duties were similar to those of a judge, we hold that the judicial conduct principles applied to him, resulting in a duty to recuse himself when his impartiality was reasonably questioned. We also hold that plaintiffs' complaint stated a cause of action because it sufficiently alleged the appearance of impropriety by defendant, who, as a commissioner, was required to avoid such an appearance and was statutorily prohibited from making *ex parte* communications.

■ The next issue is whether plaintiffs could therefore seek defendant's recusal via a writ of *mandamus*, a writ of prohibition, or an injunction. BPI argues that a writ of *mandamus* is the appropriate remedy to compel performance of an official duty and that defendant had a clear nondiscretionary duty to recuse himself. BPI also argues that a writ of *mandamus* would prevent damage to public confidence in the ratemaking proceedings. Defendant argues that plaintiffs were not entitled to a writ of *mandamus* because his constructive denial of the motion to recuse was a discretionary act within his legitimate authority.

We hold that defendant's duty to recuse was not discretionary and that, therefore, the trial court erred in not granting a writ of *mandamus*. See *United States v. Balistrieri* (7th Cir. 1985), 779 F.2d 1191, 1205 (writ of *mandamus* was the remedy against a judge who refused to recuse himself when required); *Crump v. Illinois Prisoner Review Board* (1989), 181 Ill. App. 3d 58, 60, 536 N.E.2d 875 (*mandamus* is a remedy used to direct a public official to perform a duty which plaintiff has a clear right to have performed and which does not involve the exercise of judgment or discretion).

The judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.