LENNY SZAREK, INC., Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Daniel Rub, Appellee).

Third District (Illinois Workers' Compensation Commission Division)
No. 3—08—0530WC

Opinion filed October 20, 2009.—Rehearing denied December 23, 2009.

Jeffrey Corso, of Cooney Corso, LLC, of Lisle, for appellant.

Ronald W. Cobb, of Lusak & Cobb, of Chicago, for appellee.

JUSTICE HUDSON delivered the opinion of the court:

Claimant, Daniel Rub, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)) alleging he sustained injuries while in the employ of Lenny Szarek, Inc. (respondent). Claimant, a third-year apprentice was injured when he fell through a hole in the second-story floor of a house at which he was working. Following the incident, claimant tested positive for the presence of both marijuana and cocaine metabolites. On this basis, respondent denied the claim. The Commission—adopting the decision of the arbitrator—awarded benefits and penalties under the Act. Respondent brought this timely appeal.

On appeal, respondent raises several issues. First, it contends that the arbitrator should have recused herself due to litigation pending between the arbitrator and respondent. Second, it argues that its cross-examination of claimant was improperly restricted. Third, it contests the Commission's findings that claimant's injury arose out of and occurred in the course of his employment, and in a related argument, it asks that we adopt a new standard for assessing marijuana intoxication. Fourth, it alleges error in the Commission's decision to impose penalties and fees under sections 16 and 19(k) of the Act (820 ILCS 305/16, 19(k) (West 2002)). For the reasons that follow, we affirm in part and reverse in part.

## BACKGROUND

Claimant, a 21-year-old apprentice carpenter, was employed by respondent. On July 2, 2001, he and Mark Fashingbauer, a journeyman carpenter, were framing the exterior walls on the second floor of a new house. There was a nine-foot-by-nine-foot opening in the center of the floor. An orange line had been painted around the opening, but no guardrails had been erected. At about 9 a.m., claimant had snapped a chalk line and was reeling in the line. Fashingbauer turned away to do something else. He then heard a noise, looked back, and saw claimant fall into the opening in the floor. Claimant fell to the basement. He was transported by ambulance to Mercy Hospital. Claimant's only recollection of the fall is that he was "screaming" and that he "thought he was going to die." Claimant suffers from paraplegia as a result of the accident.

Fashingbauer testified that he did not observe anything unusual about claimant when he arrived for work on the day of the accident. Claimant did not stumble or slur his words. Nothing about claimant's appearance indicated that he was intoxicated or impaired. Fashingbauer added that claimant appeared mentally sharp and followed directions. Rick Pellegrini, claimant's supervisor, stated that there were no noticeable signs that claimant had consumed alcohol or drugs. Claimant testified that he had not consumed any drug—except caffeine in his coffee—on the day of the accident or the previous day and further that he was not intoxicated.

At the hospital, claimant was given a urinalysis test. The test showed the presence of marijuana and cocaine metabolites. A gas chromatography analysis showed levels of 274 nanograms per milliliter (ng/ml) of cannibinoids and 536 ng/ml of cocaine in claimant's urine. Claimant admitted a history of substance abuse to a hospital social worker, but denied recent use. Respondent retained Dr. Jerrold Leikin to review claimant's medical records. Leikin is a medical toxicologist and a certified medical review officer. According to Leikin, a medical review officer "evaluates drug testing for occupational purposes." He also is a professor at Rush Medical College and the Feinberg School of Medicine. As Leikin's opinions are key to respondent's intoxication defense, we will set out his testimony with some detail.

Leikin testified that claimant's medical records revealed positive tests for both marijuana and cocaine. Leikin stated that a level of 15 ng/ml was considered a positive result in quantitative screening and that claimant's test revealed a level of about 18 times above that point. Leikin opined that claimant's test results were "consistent with impairment due to marijuana." Moreover, such results were indicative

of "proximal use." For Leikin, marijuana impairment results in "[p]erceptual abnormalities, specifically visual, coordination problems, impaired judgment, [and] increased reaction time." "Some visual acuity deficits" would occur, such as an impaired ability to judge distance. Leikin further testified that a result of 100 ng/ml would be indicative of impairment within the previous 24 hours. Leikin ultimately opined, *inter alia*, that the reason claimant "*might or could* have mistakenly stepped into the stairway opening and fell two stories through it was from an impaired visual response caused by marijuana intoxication." (Emphasis added.) He also opined that the reason claimant "*might or could* have mistakenly stepped into the stairway opening and fell two stories through it was from an impaired cognitive response caused by marijuana intoxication." (Emphasis added.) Additionally, he opined that claimant was at "a greater degree of risk for injury in his work setting due to marijuana impairment" "[a]s opposed to if there was no marijuana on board." Leikin testified that it is sometimes difficult for a person not familiar with marijuana intoxication to recognize its symptoms, as they are "very subtle." An intoxicated person might be able to "function at a certain level without detection." He did not "believe that [such a person would] be working in a sense of maximum safety." He added that an intoxicated person "may be able to perform the task, but [he did not] believe they can perform it safely."

During cross-examination, Leikin acknowledged that, though he believed claimant used marijuana within a few hours before the incident, claimant could have, as an "absolute outside" time frame, used marijuana as early as 1.5 days prior to the incident. Leikin agreed that other factors, such as hydration and the length of time since the claimant had urinated, could impact upon the concentration of cannibinoid metabolites in claimant's bladder. Leikin characterized the former as a major factor and the latter as a minor factor. He also pointed out that medical records indicated that claimant's level of hydration was normal at the time he was admitted to the hospital. Also, the amount of adipose tissue could have an impact in certain individuals, depending on patterns of past marijuana use. Leikin acknowledged that, outside of the urinalysis results and the subsequent diagnosis of substance abuse, nothing in claimant's medical records indicated he was intoxicated when he entered the emergency room. He stated, however, that an emergency room physician would not be expected to record marijuana intoxication. Leikin testified that one would normally experience a level of intoxication of which one was cognizant for 6 to 10 hours, but an individual could remain impaired for considerably longer. Leikin admitted that, while he could call claimant's intoxication "significant," he could not quantify it. Leikin

further acknowledged that he could not state claimant's intoxication was the only causal factor in the accident. Dr. James O'Donnell, a pharmacologist, testified on claimant's behalf; however, neither the Commission nor the arbitrator relied upon his testimony. One of O'Donnell's reports indicates that claimant's attorney advised O'Donnell that claimant had used marijuana on the afternoon before the fall.

The arbitrator found claimant had sustained an injury arising out of and occurring in the course of his employment. She awarded claimant $445.85 per week for the rest of his life for the "permanent and complete loss of both feet." See 820 ILCS 305/8(e)(18) (West 2000). She also ordered respondent to pay $217,099.15 for reasonable and necessary medical expenses. 820 ILCS 305/8(a) (West 2000). Finally, the arbitrator imposed penalties of $152,784.17 under section 19(k) of the Act (820 ILCS 305/19(k) (West 2000)) and attorney fees of $61,113.69 (820 ILCS 305/16 (West 2000)). She did not impose section 19(l) penalties (820 ILCS 305/19(l) (West 2000)). In the course of so ordering, the arbitrator rejected respondent's intoxication defense. She cited the testimony of Fashingbauer and Pellegrini's statement regarding claimant not appearing to be intoxicated on the day of the accident. She also noted that Leikin could not testify that claimant's use of marijuana was the sole or main cause of claimant's fall. Additionally, she noted that Leikin was opining that claimant had been exposed to marijuana sometime within the last day and a half preceding the fall.

The Commission adopted the decision of the arbitrator. It noted that Leikin only opined that claimant's fall "might or could" have been due to his marijuana use. Further, though Leikin opined claimant was at an increased risk of an accident as a result of using marijuana, he could not state "intoxication and impairment were the only factors in the accident." Additionally, the Commission reiterated that Leikin could not state that claimant's consumption of marijuana was the only cause of the accident and that he could not rule out employment related factors (namely, the hole in the floor). It also found respondent's motion to disqualify the arbitrator due to her husband's employment as a lobbyist barred by *res judicata*, and it rejected respondent's complaints about certain evidentiary matters, which we will address later. One commissioner dissented from the imposition of penalties. The circuit court of Grundy County confirmed the Commission's decision, and this appeal followed.

## B. ANALYSIS

Respondent raises several issues on appeal. We will address them in the order they are presented in respondent's brief. In resolving

these issues, the following standards apply. We will not disturb a decision of the Commission on a factual matter unless the decision is contrary to the manifest weight of the evidence. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 542 (2007). A decision is contrary to the manifest weight of the evidence only when an opposite conclusion is clearly apparent. *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 910 (2006). It is for the Commission "to resolve conflicts in the evidence, draw reasonable inferences from the evidence, and assess the credibility of the witnesses." *Edward Hines Precision Components v. Industrial Comm'n*, 356 Ill. App. 3d 186, 196 (2005). Questions of law, however, are subject to *de novo* review. *Beelman Trucking v. Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). With these standards in mind, we now turn to respondent's arguments.

## 1. WHETHER THE ARBITRATOR SHOULD HAVE RECUSED HERSELF

■ Respondent first contests the Commission's affirmance of the arbitrator's decision not to recuse herself. Whether a request for recusal should have been granted is reviewed using the abuse-of-discretion standard. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008). Respondent points out that there is pending litigation between it and the arbitrator who presided over the hearing in this case. Respondent has filed a civil action seeking to enjoin the arbitrator from sitting as an arbitrator in accordance with the Lobbyist Registration Act (25 ILCS 170/1 *et seq.* (West 2008)). That statute prohibits any person registered under it, or their spouse, from serving "on a board, commission, authority, or task force authorized or created by State law." 25 ILCS 170/3.1 (West 2008). According to respondent, the arbitrator's husband is a registered lobbyist.

Before proceeding to the merits of this issue, we note that the Commission ruled that prior litigation where respondent raised this issue was *res judicata*. For the doctrine of *res judicata* to apply, the following elements must exist: (1) a court of competent jurisdiction renders a judgment on the merits; (2) an identity exists between the causes of action; and (3) there exists an identity of parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 470 (2008). Since Rub was not a party to the prior proceedings, *res judicata*, by definition, could not apply. Perhaps the doctrine of collateral estoppel, which does not require an identity of parties, would serve as a similar bar. See *Gumma v. White*, 216 Ill. 2d 23, 38 (2005). In any event, we will address the merits of respondent's argument.

Respondent relies upon the familiar principle that an adjudicator must recuse himself or herself where an appearance of bias exists. See *Business & Professional People for the Public Interest v. Barnich*, 244 Ill. App. 3d 291, 296-97 (1993). As a preliminary matter, we must determine whether that principle applies in a proceeding under the Act. Respondent cites no cases from the Workers' Compensation Commission applying this standard. *Judicial* disqualification is governed by Supreme Court Rule 63(C). 210 Ill. 2d R. 63(C). That rule reads, in pertinent part, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where *** the judge has a personal bias or prejudice concerning a party or a party's lawyer." 210 Ill. 2d R. 63(C)(1)(a). However, "[t]he Code and supreme court rules do not apply to workers' compensation proceedings where the Act or the Commission's rules regulate the area or topic." *Preston v. Industrial Comm'n*, 332 Ill. App. 3d 708, 712 (2002). The Commission has promulgated a rule regarding the disqualification of commissioners and arbitrators. See 50 Ill. Adm. Code §7030.30, amended at 20 Ill. Reg. 3823, eff. February 15, 1996. This rule states:

> "a) No Arbitrator or Commissioner financially or otherwise interested in the outcome of any litigation, or any question connected therewith, shall participate in any manner in the adjudication of said cause, including the hearing of settlement contracts for lump sum petitions.
>
> b) Examples of instances where disqualification by an Arbitrator or Commissioner should occur include, but are not limited to the following:
>
> 1) he or she has personal knowledge of disputed evidentiary facts concerning the proceedings;
>
> 2) he or she served as an attorney in the matter in controversy;
>
> 3) he or she is a material witness concerning the matter;
>
> 4) he or she was, within the preceding two years, associated in the practice of law with any law firm or attorney currently representing any party in the controversy;
>
> 5) he or she was, within the preceding two years, employed by any party to the proceeding or any insurance carrier, service or adjustment company, medical or rehabilitation provider, labor organization or investigative service involved in the claim;
>
> 6) he or she or his or her spouse, or a person within the third degree of relationship (pursuant to the civil law system) to either of them, or the spouse of such person:
>
> A) is a party to the proceeding, or an officer, director or trustee of a party;

B) is acting as an attorney in the proceeding;

C) is known by the Arbitrator or Commissioner to have a substantial financial interest in the subject matter in controversy;

D) is to the Arbitrator's or Commissioner's knowledge likely to be a material witness in the proceeding;

7) he or she negotiated for employment with a party, a party's attorney or insurance carrier or service or adjustment company, in a matter in which the Arbitrator or Commissioner is presiding or participating in an adjudicative capacity." 50 Ill. Adm. Code §7030.30, amended at 20 Ill. Reg. 3823-24, eff. February 15, 1996.

Though the Commission's rule is similar to Supreme Court Rule 63(c), there are some key differences. Notably, the Commission's rule does not contain language similar to the supreme court's admonition that a judge must recuse where his or her "impartiality might reasonably be questioned." Therefore, the supreme court's rule, by its plain language, contemplates the consideration of the appearance of impropriety. The Commission's rule, conversely, does not include similar language. Hence, the Commission requires a showing of actual bias, or, as the Commission puts it, that the adjudicator is "financially or otherwise interested in the outcome of any litigation" (50 Ill. Adm. Code §7030.30(a), amended at 20 Ill. Reg. 3823, eff. February 15, 1996). Respondent does not address this difference in the law governing proceedings under the Act. Parenthetically, we are unsure why the Commission's rule does not embody a standard similar to that set forth by the supreme court. Unless there is some compelling reason of which we are unaware, it would seem to us the better practice would be to more closely follow the supreme court on this issue.

Moreover, assuming *arguendo* that respondent is correct in applying the appearance-of-impropriety standard, respondent provides no case law whatsoever addressing whether pending litigation between a party and an adjudicator mandates the adjudicator's recusal. The case law we have located is generally not favorable to respondent's position. Numerous courts recognize the potential for a party to manipulate the course of litigation and frustrate the orderly administration of justice by filing a suit against a judge simply to disqualify the judge. See *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) ("[T]he disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking" (emphasis in

original)); *Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (1977) ("[I]f we were to hold as a matter of law that a party can obtain a disqualification of a sitting judge merely by filing suit against him, the orderly administration of judicial proceedings would be severely hampered and thwarted"). Thus, the mere fact that such litigation is pending will not generally require recusal. *Callahan v. State*, 712 S.W.2d 25, 26-27 (Mo. App. 1986) ("We do not believe the mere fact [the judge] was named as a defendant in a separate civil suit in federal court required him to disqualify himself for cause"). The reason for this "rule is to prevent 'judge-shopping' by litigants." *Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 411 (N.D.N.Y. 1997).

The weight of authority across this nation holds that pending litigation between an adjudicator and a party is not a *per se* basis for disqualification. In *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977), the Tenth Circuit Federal Court of Appeals held that "[a] judge is not disqualified merely because a litigant sues or threatens to sue him." Similarly, the supreme court of Ohio observed that "the fact that a judge may be an adverse party in another case will not by itself automatically result in disqualification." *In re Disqualification of Hunter*, 36 Ohio St. 3d 607, 608, 522 N.E.2d 461, 462 (1988). In *United States v. Watson*, 1 F.3d 733, 735 (8th Cir. 1993), the Eighth Circuit rejected a due process challenge where a litigant complained that there was pending litigation between the presiding judge and him. A federal district court sitting in Georgia rejected the notion that "a litigant unhappy with a trial judge's ruling in a prior case can force the judge to recuse himself from future cases by simply bringing a civil action against him." *Fowler v. United States*, 699 F. Supp. 925, 928 (M.D. Ga. 1988); see also *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983) ("it *is* clear that a judge is not disqualified under 28 U.S.C. §455 (or under 28 U.S.C. §144 for that matter) merely because a litigant sues or threatens to sue him" (emphasis in original)); *United States v. Taylor*, 569 F.2d 448, 450 (7th Cir. 1978). The Delaware supreme court has also observed that "[t]he mere fact that a judge is an adverse party in another proceeding will not, by itself, result in automatic disqualification." *Los v. Los*, 595 A.2d 381, 385 (Del. 1991).

Accordingly, we are compelled to reject respondent's argument. As the appellant, respondent bears the burden of demonstrating reversible error on appeal. *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008). Respondent has not addressed the salient features of workers' compensation law with regard to this issue nor has it provided any authority mandating the disqualification of an adjudicator when litigation is pending between the adjudicator and a party. Indeed, the case law that exists overwhelmingly contradicts respondent's position.

2. CROSS-EXAMINATION

■ Respondent complains of three rulings of the Commission that pertained to its cross-examination of two of claimant's witnesses—claimant himself and James O'Donnell, claimant's expert witness. Respondent argues that it should have been permitted to cross-examine claimant regarding his use of marijuana on the day of and the day before the accident. It further contends it should have been allowed to cross-examine claimant regarding his past experiences with marijuana, particularly the "effects he experiences" when using it. Finally, it asserts it should have been permitted to cross-examine O'Donnell regarding a purported admission by claimant that he used marijuana the day before the accident. Limitations upon the scope and extent of cross-examination are within the discretion of the Commission. *Johns-Manville Products Corp. v. Industrial Comm'n*, 78 Ill. 2d 171, 181 (1979). We will disturb a discretionary decision of the Commission only if it abuses that discretion. *Global Products v. Workers' Compensation Comm'n*, 392 Ill. App. 3d 408, 411 (2009). An abuse of discretion occurs only if no reasonable person would adopt the position of the Commission. *Certified Testing v. Industrial Comm'n*, 367 Ill. App. 3d 938, 947 (2006).

The scope of cross-examination is limited to matters covered during direct examination. *Lee v. Grand Trunk Western R.R. Co.*, 143 Ill. App. 3d 500, 518 (1986). It also may include matters affecting the credibility of a witness. *Carter v. Azaran*, 332 Ill. App. 3d 948, 956 (2002). However, impeachment on a collateral matter is generally disfavored. See *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 490-91 (1980). Cross-examination regarding irrelevant matters is improper (see *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 916-17 (2007)), and questions "designed to harass, annoy or humiliate a witness should not be tolerated" (*People v. Baugh*, 358 Ill. App. 3d 718, 739 (2005)). In order to warrant reversing the decision of a lower tribunal, the appellant must show that he or she was prejudiced by the trial court's decision. *Norman v. American National Fire Insurance Co.*, 198 Ill. App. 3d 269, 295 (1990). Additionally, where the evidence supporting the decision of the lower tribunal is overwhelming or the evidence would have been cumulative with other evidence, an error in limiting the scope of cross-examination may be deemed harmless. *People v. Rainone*, 176 Ill. App. 3d 35, 41 (1988).

Respondent first points to the arbitrator's refusal to allow it to cross-examine claimant regarding whether he used marijuana on the day of or before the accident. On direct, claimant testified that he had not done so. Initially, we question the relevance of whether claimant

used marijuana the day before the accident. Leikin testified that claimant used marijuana within the previous 1.5 days prior to the accident, and he could not state that marijuana intoxication was the sole cause of the accident. Moreover, the observations of Fashingbauer and Pellegrini refute the notion that claimant was so intoxicated as to have abandoned his employment, even if respondent could establish claimant used marijuana on the previous day. Additionally, even if he had used marijuana on the day of the accident, no evidence in the record establishes that such use, if it happened, would have been the sole cause of the accident. Further, to the extent that Leikin testified to the time frame of claimant's alleged usage, such cross-examination would have been cumulative as well. In short, we see no reasonable probability that, had respondent established the point it here seeks to make or had it undermined claimant's testimony to the contrary, a different result would have followed.

Respondent also argues that it should have been allowed to question claimant generally on his admitted past marijuana use to establish whether he was sufficiently familiar with the drug's effects to testify that he was not intoxicated at the time of the accident. It is undisputed that respondent was engaged in his job (winding in a chalk line). It is not apparent to us how, if we assume claimant was intoxicated, that would alter the result of the case in light of Leikin's failure to opine marijuana use was the sole cause of the accident. Respondent had to demonstrate not only that claimant was intoxicated, but that marijuana use was the sole cause of the accident or that claimant departed from the scope of his employment. See *Lock 26 Constructors v. Industrial Comm'n*, 243 Ill. App. 3d 882, 887-88 (1993). In other words, we see no prejudice to respondent here.

Finally, respondent complains that it was denied the opportunity to cross-examine O'Donnell regarding a statement claimant's attorney made to O'Donnell regarding claimant using marijuana on the afternoon before the accident. We fail to see the relevance of this testimony. Even if true, nothing exists in the record to support the proposition that such usage could have been the sole cause of the accident or that it would have rendered claimant so intoxicated that he had abandoned his employment.

In sum, the alleged errors of which respondent complains would not have altered the result to the proceedings. As such, respondent has failed to show that they were prejudicial to it. We therefore reject respondent's arguments on this point.

3. CAUSATION

■ Respondent argues that claimant did not prove his injuries were caused by his employment. An injury is compensable under the

Act only if it arose out of and occurred in the course of employment. *Rotberg v. Industrial Comm'n*, 361 Ill. App. 3d 673, 679 (2005). Respondent contends claimant's alleged marijuana intoxication makes these findings impossible. In *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 481 (1989), our supreme court articulated two ways in which an employer could successfully make out an intoxication defense:

> "First, an employee, though in the course of his employment, will be denied recovery if his intoxication is the cause of the injury—that is, if the injury arose out of the intoxication rather than out of the employment. Second, excessive intoxication may constitute a departure from the course of employment, and an employee who is injured in that condition does not sustain an injury in the course of his employment. Under the latter rationale, intoxication of a sufficient degree is viewed as an abandonment of employment, or a departure from employment."

As a preliminary matter, respondent asks that we abandon these standards and adopt a new test for an intoxication defense based on marijuana usage that is not as demanding upon an employer. It suggests that "if scientific evidence establishes that [the employee was] marijuana impaired at the time of the accident, recovery should be denied altogether."

Initially, we note that *Paganelis* is a supreme court case. We, of course, cannot overrule the supreme court. *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 744 (2000). Moreover, we do not find respondent's position persuasive. The law regarding the defense of intoxication is not new or novel. See *District 141, International Ass'n of Machinists & Aerospace Workers v. Industrial Comm'n*, 79 Ill. 2d 544, 557-58 (1980). It is embodied in Professor Larson's respected treatise. See *Paganelis*, 132 Ill. 2d at 480-81, quoting 1A A. Larson, Workers' Compensation Law §34.00, at 6—64 (1985).

Ultimately, we believe that changes such as those advocated by respondent should come from the legislature rather than the courts. Respondent points to some policy considerations in support of its position. For example, it suggests that the current standard "runs counter to the public policy of Illinois" in that the state and employers in this state spend large sums of money to prevent drug use in the workplace. The court system is simply not well suited to address an issue such as this. *Charles v. Seigfried*, 165 Ill. 2d 482, 493 (1995) ("The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to weigh and properly balance the many competing societal, economic, and

policy considerations involved"). Accordingly, we reject respondent's request to rewrite the law regarding marijuana intoxication. Indeed, since the case law that embodies it comes from the supreme court, we could not grant respondent's request even if we were so inclined. We will therefore apply existing law to respondent's arguments regarding causation.

■ Respondent first contends that claimant's injuries did not occur in the course of employment. Respondent cites *Paganelis*, 132 Ill. 2d 468, and *Parro v. Industrial Comm'n*, 167 Ill. 2d 385 (1995), two cases where the claimants' high blood-alcohol contents were given great weight in denying compensation under the Act. We find these cases distinguishable in that they involve alcohol rather than marijuana. The testing for these two substances is simply different. Respondent points to nothing to suggest that the same inferences should flow from the presence of alcohol in the blood and the presence of marijuana metabolites in the urine. The statements of two of respondent's employees regarding claimant's condition prior to the accident—which the Commission expressly relied upon—clearly establishes that claimant was performing his job prior to and at the time of his injuries. Respondent asserts that the testimony of these witnesses is "clearly untrue in light of the two urine tests." We disagree. As Leikin acknowledged, the test results indicated that usage could have occurred up to 1.5 days before the accident. Respondent also asserts that "[o]ne can reasonably infer" that Fashingbauer believed claimant to have been intoxicated from his refusal to state why claimant "walked right into that hole." Perhaps this is so, but the Commission, which is the trier of fact, apparently did not draw this inference. We cannot say it is so compelling that the Commission was required to draw it. At the very least, given the state of the record, we cannot say that a conclusion opposite to the one drawn by the Commission is clearly apparent, so its decision is not against the manifest weight of the evidence. *University of Illinois*, 365 Ill. App. 3d at 910. Finally, respondent cites *Sekora v. Industrial Comm'n*, 198 Ill. App. 3d 584, 590 (1990), for the proposition that "if an employee voluntarily and in an unexpected manner exposes himself to a risk outside any reasonable exercise of his duties, a resulting injury will not be within the course of employment unless the employer had knowledge of or acquiesced in such unreasonable conduct." *Sekora*, however, does not involve intoxication. Hence, *Paganelis* and *Parro*, which specifically address that issue, are controlling.

Respondent also argues that claimant's injuries did not arise out of his employment. It is well established that "an injury arises out of the employment if the claimant was exposed to a risk of harm beyond

that to which the general public is exposed." *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 911 (2006). We have little trouble concluding that an open hole in a floor is not something to which the general public is typically exposed. Nevertheless, respondent argues that claimant had "managed to safely negotiate [similar holes] on more than one dozen homes prior to the accident." Respondent continues, "The causative agent of his fall was not the hole, but rather his impaired depth perception, reaction time,, [*sic*] and judgment caused by his marijuana intoxicated state." Respondent concludes, "As such, the finding that [claimant's] accident was caused by anything other than his marijuana-induced state is against the manifest weight of the evidence." We disagree. Ample evidence supports the Commission's decision. Notably, but for the existence of the hole, claimant could not have fallen through it. *Cf. O'Fallon School District No. 90 v. Industrial Comm'n*, 313 Ill. App. 3d 413, 416-17 (2000) (holding a but-for relationship to a condition of employment was sufficient to find an injury arose out of employment). As such, even if marijuana impairment was a contributing cause of claimant's injury, it was not the sole cause. Under *Paganelis*, it would have to be the sole cause to prevent claimant from recovering under the Act. *Paganelis*, 132 Ill. 2d at 481. As it is often stated, "A claimant is not required to prove that employment was the sole or principle cause, but only that the employment was a causative factor." *Palos Electric Co. v. Industrial Comm'n*, 314 Ill. App. 3d 920, 926 (2000). We cannot say that the Commission's decision that claimant met that standard is contrary to the manifest weight of the evidence.

4. PENALTIES AND ATTORNEY FEES

Finally, respondent contests the Commission's decision to award penalties under section 19(k) of the Act and attorney fees under section 16 of the Act (820 ILCS 305/16, 19(k) (West 2002)). The Commission did not award penalties under section 19(l) (820 ILCS 305/19(l) (West 2002)). As an initial matter, respondent argues that the Commission's failure to award penalties under section 19(l) makes further awards of fees and penalties improper since section 19(l) requires a lower standard of proof than the two sections relied on by the Commission. See *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 806 (2005). We would find this argument persuasive if the Commission had found that penalties under section 19(l) were inappropriate. However, respondent points to no such finding. We will not speculate on the reason they were not awarded. Indeed, as claimant points out, at the time he was injured, section 19(l) read: "In case the employer or his insurance carrier shall without good and just cause

fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits due to an injured employee *during the period of temporary total disability* the arbitrator or the Commission shall allow the employee additional compensation." (Emphasis added.) 820 ILCS 305/19(l) (West 2002). Claimant points out that he was never granted temporary total disability. In any event, absent affirmative inconsistent findings, we find respondent's argument unpersuasive. We will now turn to the two statutory provisions pursuant to which the Commission made its awards.

Section 16 provides, in relevant part:

> "Whenever the Commission shall find that the employer, his or her agent, service company or insurance carrier has been guilty of delay or unfairness towards an employee in the adjustment, settlement or payment of benefits due such employee within the purview of the provisions of paragraph (c) of Section 4 of this Act; or has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation benefits, or has engaged in frivolous defenses which do not present a real controversy, within the purview of the provisions of paragraph (k) of Section 19 of this Act, the Commission may assess all or any part of the attorney's fees and costs against such employer and his or her insurance carrier." 820 ILCS 305/16 (West 2002).

Similarly, section 19(k) states:

> "In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." 820 ILCS 305/19(k) (West 2002).

Both sections allow for additional awards to a claimant where an employer has been guilty of unreasonable or vexatious delay, and they apply under similar circumstances (*USF Holland, Inc.*, 357 Ill. App. 3d at 805).

Generally, a good-faith challenge to liability will not result in fees or penalties being imposed. *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173 (2001). To avoid the imposition of penalties and fees, an employer must show that the facts in its possession would have lead a reasonable person to believe that a claimant is not entitled to prevail under the Act. *County of Cook v. Industrial Comm'n*, 160 Ill. App. 3d 825, 830 (1987). An honest, though flawed, belief is not enough

to escape liability. *County of Cook*, 160 Ill. App. 3d at 830. The burden is on the employer to show that any delay in paying benefits is reasonable. *Electro-Motive Division v. Industrial Comm'n*, 250 Ill. App. 3d 432, 436 (1993). This issue presents a factual question to which the manifest-weight standard of review applies. *Matlock*, 321 Ill. App. 3d at 173. A finding is contrary to the manifest weight of the evidence where an opposite conclusion is clearly apparent. *Ameritech Services, Inc. v. Workers' Compensation Comm'n*, 389 Ill. App. 3d 191, 203 (2009). After carefully reviewing the record, we disagree with the Commission and find that an opposite conclusion to the one at which it arrived is clearly entailed in the evidence.

█ Respondent argues that the facts available to it justified its denial of benefits to claimant. We agree. It points to claimant's urine tests that revealed what it terms "severe marijuana intoxication" and Leikin's opinions that were derived from them. Respondent also contends that it was entitled to rely on *Paganelis* and *Parro*. Those cases are distinguishable in that they involved alcohol rather than marijuana; however, since we had not articulated this distinction with any degree of detail in the past, respondent was not unreasonable in seeking to analogize the present situation to those cases.

In sum, a reasonable person in possession of the facts available to respondent could have concluded that claimant was not entitled to benefits under the Act. In any event, we do hold that an opposite conclusion to that drawn by the Commission is clearly apparent. Accordingly, the Commission decision to award penalties and fees was erroneous given the state of the record in this case.

## III. CONCLUSION

In light of the foregoing, the decision of the circuit court of Grundy County confirming the decision of the Workers' Compensation Commission is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and DONOVAN, JJ., concur.