EARL SCHMIDGALL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Illinois Power Company, Appellee).

Fourth District (Industrial Commission Division)   No. 4—94—0076WC

Argued November 16, 1994.—Opinion filed December 23, 1994.—Rehearing denied February 6, 1995.

Diane E. Greanias (argued), of Peoria Heights, and Warren E. Danz, of Warren E. Danz, P.C., of Peoria, for appellant.

James T. Foley (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Earl Schmidgall, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) for injuries to his right side sustained on March 8, 1985, while in the employ of Illinois Power Company (employer). The arbitrator determined claimant was entitled to only $15^3/_7$ weeks of temporary total disability compensation representing the date of disability up to the effective date of his retirement and therefore employer was entitled to credit of approximately $71,500 for overpayment. The arbitrator also awarded claimant 15% permanent partial disability for the loss of use of his right arm. On review, the Industrial

Commission (Commission) affirmed the termination of temporary total disability benefits as of the date claimant began receiving social security retirement benefits but awarded claimant 65% loss of use of his right arm plus medical expenses for treatment of his right shoulder. The circuit court of De Witt County confirmed the Commission's decision.

Claimant contends on appeal the termination of temporary total disability benefits subsequent to the date he began receiving social security retirement benefits is contrary to the manifest weight of the evidence and law. Claimant also believes the award of permanent partial disability benefits as opposed to permanent total disability benefits is against the manifest weight of the evidence. We affirm in part and reverse in part.

At the time of the accident on March 8, 1985, claimant was 61 years old and had been a sheet metal worker for 45 years. On March 8, claimant was tripped accidentally by a co-worker as he was leaving work. Claimant fell onto a concrete floor on his right side, and the co-worker fell on top of him. Claimant experienced immediate pain throughout his entire right side. On March 11 when claimant returned to work, he had bruises and swelling from his rib cage to his shoulder and all over his right arm. Claimant's foreman sent him to the first aid station where he was then sent to a nearby hospital. Claimant initially received hot pack treatments and daily physical therapy through March 21. From March 21 to July, claimant received physical therapy one to three times a week. During this time claimant performed light-duty work for employer. In July, claimant was referred to an orthopedic surgeon, Dr. James Flaherty. Once claimant came under Dr. Flaherty's care, claimant was laid off light-duty work and employer began paying him temporary total disability benefits. Dr. Flaherty continued the physical therapy primarily to claimant's right elbow, and on September 3, 1985, excised an olecranon bursa from the elbow. By November 1986, claimant began seeing Dr. Ronald Palmer, Dr. Flaherty's partner. Claimant was still suffering from pain at the surgery site and experiencing grinding sensations in the elbow. Dr. Palmer diagnosed an impingement syndrome of claimant's right shoulder and osteoarthritis of his right elbow joint. He prescribed physical therapy, anti-inflammatory medication, heat packs and ultrasound for the shoulder. On January 23, 1987, claimant underwent arthrotomy of his right elbow, and on November 23, 1988, claimant underwent arthroscopic shoulder surgery performed by Dr. Bernard Cahill. All doctors who treated claimant believed his condition was causally related to the injury of March 8, 1985. Dr. Cahill opined claimant's condition was permanent

and his prognosis poor. Both Drs. Palmer and Cahill testified claimant was going to have a significant amount of difficulty with both the elbow and shoulder for the rest of his life.

At the request of employer, claimant was examined by Dr. Choon Choi, an orthopedic surgeon. Dr. Choi first examined claimant on May 22, 1986, at which time he believed claimant could return to his former position as a sheet metal worker. By his second examination on January 21, 1988, Dr. Choi opined claimant no longer could perform his job as a sheet metal worker.

Claimant testified at the arbitration hearing he experiences constant pain in his shoulder and elbow, both catch and creak, and his elbow is always swollen. He last saw Dr. Palmer in July 1990 and still has not been released to return to work. Claimant began receiving social security benefits on November 1, 1985.

■ Temporary total disability has been defined as that condition which exists from the time an injury incapacitates an employee for work until such time as he is as far recovered or restored as the character of the injury will permit. (*Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 467, 413 N.E.2d 390, 392.) To prove a temporary total disability claim, the employee must show not only that he did not work but that he also was unable to work. (*Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 55, 489 N.E.2d 913, 917.) The determination of when recovery or stabilization of a condition occurs is a question of fact to be determined by the Commission, and unless its findings are contrary to the manifest weight of the evidence, that determination will not be set aside on review. *Brinkmann,* 82 Ill. 2d at 467, 413 N.E.2d at 392.

■ Here, the Commission concluded claimant was automatically precluded from receiving temporary total disability benefits once he began receiving social security benefits on November 1, 1985, as he had removed himself from the work force. Claimant asserts he did not remove himself from the work force; he physically was not able to work. He further points out a recipient of social security retirement benefits is not required to remove himself from the work force in order to receive benefits. We agree with claimant that under section 403(f)(8)(B) of title 42 of the United States Code (42 U.S.C.A. § 403(f)(8)(B) (West 1991)), a recipient of social security retirement benefits is entitled to earn an "exempt" amount before his benefits will be reduced. Employer, on the other hand, asserts claimant could have performed sedentary work, and by accepting retirement benefits, the Commission logically could infer claimant had no intention of ever seeking employment. There is no clear-cut answer to this question. We do note, however, that the ability to do light

work does not preclude a finding of temporary total disability (see *Ford Motor Co. v. Industrial Comm'n* (1984), 126 Ill. App. 3d 739, 743, 467 N.E.2d 1018, 1021), and it has been held that temporary total disability benefits are not precluded or even reduced by collecting unemployment compensation benefits (see *Crow's Hybrid Corn Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 168, 178-79, 380 N.E.2d 777, 781-82). What is clear is that claimant immediately began receiving medical treatment after the accident and once he had his first surgery in September 1985 was not released for any type of work. Claimant had not removed himself from the work force; his doctor had. The issue of whether claimant desired to work is relevant only if claimant is physically able to work. The mere fact that claimant began receiving social security benefits some two months later does not mean claimant had been released to return to work. Clearly a recipient of social security retirement benefits is not required to remove himself from the work force in order to receive benefits. Under section 403(f)(8)(B) of title 42 of the United States Code, an individual may still work while accepting retirement benefits. The more logical choice therefore would be to reduce or offset claimant's social security benefits based on the amount of temporary total disability benefits received. We simply cannot accept the determination that receipt of social security retirement benefits automatically terminates a claimant's entitlement to temporary total disability benefits, especially when that claimant is still temporarily totally disabled. (See also *Old Ben Coal Co. v. Industrial Comm'n* (1994), 261 Ill. App. 3d 812, 817, 634 N.E.2d 285, 289 (no *per se* rule that retired person is not entitled to permanent total disability benefits).) Accordingly, we reverse the termination of temporary total disability benefits as of the date claimant began receiving social security retirement benefits and remand this cause to the Commission with instructions to award a period of temporary total disability terminating on the date the Commission determines claimant was as far recovered as the nature of his injuries would permit.

■ Turning to the issue of permanent partial disability, the determination of the extent or permanency of an employee's disability is a question of fact for the Commission and its decision will not be set aside unless it is against the manifest weight of the evidence. (*Esposito v. Industrial Comm'n* (1989), 186 Ill. App. 3d 728, 737, 542 N.E.2d 843, 849.) An employee is totally and permanently disabled when he is unable to make some contribution to the work force sufficient to justify the payment of wages. (*A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 487, 397 N.E.2d 804, 806; *Old Ben Coal Co. v. Industrial Comm'n*

(1991), 217 Ill. App. 3d 70, 84, 576 N.E.2d 890, 899.) While the employee need not be reduced to a state of total physical or mental incapacity or helplessness, the inability to do very strenuous manual labor also does not necessarily make one permanently and totally disabled. (*A.M.T.C.*, 77 Ill. 2d at 489, 397 N.E.2d at 807.) The ability to perform sedentary work is a factor militating against a finding that one is permanently and totally disabled. *Hallenbeck v. Industrial Comm'n* (1992), 232 Ill. App. 3d 562, 569, 597 N.E.2d 797, 801.

■ Here, the medical evidence was somewhat conflicting as to claimant's ability to perform any type of work. All of the doctors eventually agreed claimant could no longer perform his job as a sheet metal worker. And, although his condition was deemed permanent and his prognosis for recovery was poor, at least one expert believed claimant could perform sedentary work. This conflict was for the Commission to resolve. More importantly, claimant presented no evidence as to his inability to find suitable employment for a person in his circumstances. Nothing in the record even described claimant's education or qualifications or lack thereof for alternative employment. Given such sparsity, it is reasonable to conclude the Commission believed claimant simply had not met his burden to establish the unavailability of employment and therefore did not meet his burden of proving he was totally and permanently disabled. (See *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159, 1163.) Under such circumstances, we cannot say the Commission's decision is against the manifest weight of the evidence.

For the aforementioned reasons, we affirm that portion of the decision of the circuit court of De Witt County confirming the decision of the Commission pertaining to the award of permanent partial disability benefits. As for the termination of temporary total disability benefits based on the receipt of social security benefits, we reverse and remand this cause to the Commission for determination of the true termination date.

Affirmed in part; reversed in part and remanded with directions.

McCULLOUGH, P.J., and RAKOWSKI, GEIGER, and SLATER, JJ., concur.