Docket No. 107852.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

INTERSTATE SCAFFOLDING, INC., Appellee, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jeff Urban, Appellant).

*Opinion filed January 22, 2010.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

In this appeal we are asked to consider whether an employer's obligation to pay temporary total disability (TTD) workers' compensation benefits to an employee who was injured in the course of his employment ceases when the employer terminates the employee for conduct unrelated to the injury. For reasons that follow, we hold that when an employee who is entitled to receive workers' compensation benefits as a result of a work-related injury is later terminated for conduct unrelated to the injury, the employer's obligation to pay TTD workers' compensation benefits continues until

the employee's medical condition has stabilized and he has reached maximum medical improvement.

## BACKGROUND

Claimant Jeff Urban (Urban) was employed by Interstate Scaffolding, Inc. (Interstate), as a union carpenter on July 2, 2003, when he sustained a work-related injury to his head, neck, and back. He was transported by ambulance to Silver Cross Hospital, where he was diagnosed with a mild concussion and cervical strain. Although Urban returned to work soon after the injury, he continued to experience persistent headaches, cervical pain, and numbness in his arms.

Between July 2, 2003, and May 25, 2005, Urban underwent numerous diagnostic tests and treatments for his medical condition resulting from the July 2, 2003, injury. At times Urban's doctor required him to remain off work. At other times, Urban was able to work "light duty" with restrictions ordered by his doctor. Urban received TTD workers' compensation benefits when he could not work and, when working light duty, Urban received a workers' compensation maintenance benefit to make up the difference in income between his previous carpenter's pay and his light-duty pay. It is undisputed that between July 2, 2003, and May 25, 2005, Interstate paid a total of $48,060.80 in TTD and maintenance benefits, as well as medical expenses totaling $50,809.78.

On May 25, 2005, an incident occurred, culminating in Urban's dismissal. On that day Urban was working a light-duty assignment at Interstate's East Hazel Crest facility. Sometime that morning, Urban went to the office and spoke to Rebecca Parks, a secretary at Interstate who worked in payroll. He told her that he believed there was an error in his paycheck regarding the amount deducted for federal withholding. During the discussion with Parks, Urban mentioned that a paycheck he received a few weeks earlier also had been wrong. He stated that in the earlier check he had been overpaid because he was paid union scale instead of light-duty pay.

After speaking with Parks, Urban went back to work. Parks, however, relayed what Urban had told her to Jan Coffey, the assistant to Interstate's president, Ron Fowler. Upon learning this information,

Coffey became irate. She knew that a few weeks earlier, in April 2005, Urban had written some religious "graffiti" or slogans in a storage room on Interstate's premises. Therefore, when she learned that Urban had retained an overpayment in his paycheck, Coffey felt that such conduct ran counter to Urban's professed religious beliefs. Coffey left the office to find Urban, confronted him, and accused him of being a "hypocrite."

Urban became angered by Coffey's confrontation. He engaged in a brief heated argument with Coffey, after which he called the East Hazel Crest police department and lodged a complaint of harassment and religious discrimination. A police officer arrived at the Interstate facility and interviewed both Urban and Coffey. Although a police report was prepared, no arrests or other action was taken by the police.

After the officer left the facility, Coffey phoned company president Ron Fowler and told him what had occurred. According to Coffey, during this phone call she told Fowler, for the first time, about the religious graffiti Urban had written on the shelves of the storage room. Coffey said she only told Fowler about the graffiti to explain why she had become so upset by Urban's comments to Parks.

After Coffey spoke to Fowler, Fowler asked to speak with Urban's supervisor, Barry Manuel. Fowler instructed Manuel to fire Urban. When Manuel did so, he told Urban that Fowler's stated reason for Urban's dismissal was Urban's defacement of Interstate property as a result of the religious graffiti Urban had written in permanent black marker in the storage room.

When Interstate terminated Urban, it also refused to pay him TTD benefits. Consequently, Urban filed an application for adjustment of claim with the Workers' Compensation Commission.

On June 28, 2005, a hearing was held on Urban's claim before Leo Hennessy, an arbitrator for the Workers' Compensation Commission. At the hearing, Urban testified regarding his July 2, 2003, injury and the subsequent medical treatment he had received. Urban explained that on July 2, 2003, he had suffered heat stroke and was injured when he was dropped on his head while being transported to the ambulance. Subsequently, he continued to experience headaches, neck pain, shoulder pain, and numbness in his upper

extremities. In December 2003, he began treatment with Dr. Young at Rush University Hospital. Dr. Young sent Urban for MRI testing and started him on a course of treatment which included injections for neck pain; nerve block and radio frequency procedures for migraine headaches and shoulder pain; and physical therapy.

Urban testified that he also saw Dr. Bernstein at his employer's request. Dr. Bernstein recommended a spinal fusion operation. Urban testified that he had rejected this more radical procedure until he could determine whether the medication and therapies prescribed by Dr. Young would be successful. However, he testified at the hearing that he was still experiencing significant pain and, for that reason, now decided to undergo the spinal fusion operation.

Urban also testified about the events surrounding his dismissal. Urban admitted that he had written religious slogans in the storage room at Interstate's facility, but he did not believe those writings were the reason for his dismissal. Urban testified that other employees had written on, or made markings on, the shelves and walls of the storage room and there had never been any repercussions of any kind.

After Urban completed his testimony, he placed into evidence several exhibits containing his medical records. These records documented the diagnoses, medications, and treatments Urban had received from the date of the injury through the date of the hearing.

The only other witness to testify at the hearing was Jan Coffey, who testified for Interstate. Her testimony was solely about the events of May 25, 2005, which led up to Urban's dismissal. In addition, a typed summary of the events, prepared by Coffey and Parks on or about May 25, 2005, was introduced as Interstate's exhibit No. 7. Interstate also placed into evidence exhibits consisting of photographs of the religious graffiti Urban admittedly wrote on the shelves of the storage room.

On July 22, 2005, the arbitrator issued a decision on Urban's claim. After summarizing the facts of the case and recounting the testimony presented at the hearing, arbitrator Hennessy came to the following conclusion:

> "Notwithstanding the divisive, conflicting testimony regarding the arguments and confrontations of May 25, 2005, at the Respondent's place of business and the unusual basis for the

-4-

termination of the Petitioner, this Arbitrator finds the Petitioner is not entitled to temporary total disability benefits subsequent to his termination of May 25, 2005."

The arbitrator's decision, which offered no explanation as to why Urban was found not to be entitled to TTD benefits, was filed with the Workers' Compensation Commission on July 27, 2005. Urban then filed a petition for review pursuant to section 19(b) of the Workers' Compensation Act (820 ILCS 305/19(b) (West 2004)).

On November 16, 2006, the Commission issued a decision modifying the arbitrator's ruling.[1] In its decision, the Commission held that Urban was entitled to TTD benefits in the sum of $1,004.41 per week for the five-week period between Urban's May 25, 2005, termination and the arbitration hearing on June 28, 2005, "based on the fact that Petition's condition had not stabilize [*sic*] as of the June 29, 2005, [*sic*] Arbitrator's hearing." In addition, the Commission remanded the matter to the arbitrator "for further proceedings for a determination of a further amount of temporary total compensation or of compensation for permanent disability, if any, pursuant to *Thomas v. Industrial Commission*, 78 Ill. 2d 327, 399 N.E.2d 1322, 35 Ill. Dec. 794 (1980)." The Commission also ordered Interstate to pay Urban interest on the award pursuant to section 19(n) of the Act. The Commission did not discuss or make any findings with regard to Urban's termination.

Interstate sought administrative review of the Commission's decision in the circuit court of Will County. The circuit court confirmed the Commission's decision.

Further appeal was taken by Interstate and, in a 3-2 decision, the workers' compensation division of the appellate court reversed the Commission's decision and award of benefits. The appellate court concluded that Urban was not entitled to TTD benefits after his termination "for cause" on May 25, 2005. 385 Ill. App. 3d 1040.

Urban filed a timely petition for leave to appeal with this court, which we granted. We permitted the Illinois Trial Lawyers

---

[1]The Commission subsequently issued a corrected decision on December 6, 2006, to address a clerical error. The December 6 decision was otherwise identical to the November 16, 2006, decision.

Association and the Illinois AFL-CIO to file *amicus curiae* briefs in support of Urban. In addition, the Illinois Association of Defense Trial Counsel and the Illinois Self Insurers Association were permitted to file *amicus curiae* briefs on behalf of Interstate.

ANALYSIS

In the case at bar, the Commission awarded Urban TTD benefits, finding that Urban's work-related injury had not yet stabilized. The appellate court agreed with the Commission's factual findings that Urban's work-related injury had not stabilized and that Urban remained temporarily totally disabled. Nevertheless, the appellate court set aside the Commission's award of benefits based on the fact that Urban had been discharged by his employer due to conduct unrelated to his injury. Thus, the issue before us is one of law–whether an employer's obligation to pay temporary total disability benefits to an employee who suffered a work-related injury ends if the employee returns to work for a light-duty assignment and, while working light duty, is terminated for conduct unrelated to his injury. Our review, therefore, is *de novo*. See *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 553 (2004) (where there are no factual disputes, review of Commission's ruling is *de novo*). As noted by the appellate court below, this issue has never before been addressed in any reported decision in Illinois. 385 Ill. App. 3d at 1044.

Urban argues that an employee's dismissal should have no impact on that employee's entitlement to TTD benefits. He contends that here, as in any case which comes before the Commission where the question is whether an injured employee is entitled to TTD benefits, the dispositive test is whether the worker's condition has stabilized and he has reached maximum medical improvement. See *Freeman United Coal Mining Co. v. Industrial Comm'n*, 318 Ill. App. 3d 170, 178 (2000). Urban points out that, in the case at bar, the appellate court agreed with the Commission that Urban's condition had not yet stabilized at the time of the hearing. Thus, Urban contends that he is entitled to TTD benefits until such time as his medical condition stabilizes, notwithstanding his dismissal. He asks that we reverse the appellate court judgment and reinstate the decision of the Commission.

-6-

Interstate, on the other hand, embraces the logic and reasoning of the majority opinion of the appellate court below and asks us to adopt its holding that an employer may cease paying TTD benefits if the injured employee commits a volitional act of misconduct that serves as justification for his termination. See 385 Ill. App. 3d at 1047.

It is a well-settled principle that when a claimant seeks TTD benefits, the dispositive inquiry is whether the claimant's condition has stabilized, *i.e.*, whether the claimant has reached maximum medical improvement. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 542 (2007); *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 594 (2005); *F&B Manufacturing Co. v. Industrial Comm'n*, 325 Ill. App. 3d 527, 531 (2001). See also *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118 (1990) (TTD compensation is provided for in section 8(b) of the Workers' Compensation Act, which provides, "[W]eekly compensation *** shall be paid *** as long as the total temporary incapacity lasts," which this court has interpreted to mean that an employee is temporarily totally incapacitated from the time an injury incapacitates him for work until such time as he is as far recovered or restored as the permanent character of his injury will permit). Further, the period during which a claimant is temporarily totally disabled is a question of fact to be resolved by the Commission, whose determination will not be disturbed unless it is against the manifest weight of the evidence. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118-19; *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198 (1982). Accordingly, when reviewing a decision of the Commission, the relevant test is whether there is sufficient evidence in the record to support it. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

Applying these standards, the appellate court agreed "there was sufficient evidence to support the Commission's finding that claimant's condition had not stabilized." 385 Ill. App. 3d at 1044. Nonetheless, the majority did not confirm the Commission's decision. Instead, the court held:

> "Although we agree that claimant was still temporarily totally disabled at the time of his termination, the more interesting aspect of this appeal is whether claimant is entitled to TTD benefits following his discharge from respondent's employ." 385 Ill. App. 3d at 1044.

In determining what impact, if any, an employee's discharge might have on the employee's entitlement to TTD benefits, the appellate court first looked to Illinois case law and found two cases, *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d 1087 (1996), and *Schmidgall v. Industrial Comm'n*, 268 Ill. App. 3d 845 (1994), to be "instructive." From these cases, the appellate court determined that "the critical inquiry in determining whether the employee is entitled to TTD benefits after leaving the workforce centers on whether the departure was voluntary." 385 Ill. App. 3d at 1045.

The appellate court then conducted an independent review of decisions by courts from other jurisdictions that had addressed the question of an employee's entitlement to TTD benefits following a discharge for misconduct. See 385 Ill. App. 3d at 1045-46 (and cases cited). The court noted that these cases fall into two categories: those which deny compensation to an employee who has been discharged for misconduct and those which hold that the employee's discharge does not automatically bar the employee from receiving benefits. The appellate court then concluded:

> "[W]e find that allowing an employee to collect TTD benefits from his employer after he was removed from the work force as a result of *volitional conduct* unrelated to his injury would not advance the goal of compensating an employee for a work-related injury." (Emphasis added.) 385 Ill. App. 3d at 1047.

Based on this conclusion, the majority held that Urban was not entitled to TTD benefits following his dismissal, which was the result of Urban's volitional conduct unrelated to his injury. The majority set aside the Commission's decision and its award of TTD benefits. 385 Ill. App. 3d at 1049.

The two justices who dissented agreed with the majority that an employee's TTD benefits *could* be discontinued when the employee is terminated as a result of his "volitional acts of conduct (or misconduct) that are unrelated to his disabling condition." They disagreed, however, with the majority's outright reversal of the Commission's decision in the present case. 385 Ill. App. 3d at 1049-50 (Donovan, J., dissenting, joined by Holdridge, J.). The dissenting justices believed that the majority's decision was flawed because it lacked any standards for the practical application of its "new

-8-

principle." 385 Ill. App. 3d at 1051-52 (Donovan, J., dissenting, joined by Holdridge, J.). The dissent concluded that the proper framework for deciding whether TTD benefits could be discontinued upon the injured employee's termination was the procedure set forth in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996). 385 Ill. App. 3d at 1051-52 (Donovan, J., dissenting, joined by Holdridge, J.). Relying on *Seagraves*, the dissent held:

> "[A]n employer who terminates an injured employee and who discontinues the employee's temporary benefits, has the burden to establish (a) that the employee violated a rule or policy, (b) that the employee was fired for a violation of that rule or policy, (c) that the violation would ordinarily result in the termination of a nondisabled employee, and (d) that the violation was a voluntary act within the control of the employee and not caused by the employee's disability. If the employer establishes that its employee has engaged in misconduct constituting a constructive refusal to perform the work provided or to participate in the rehabilitation plan, then the burden shifts to the employee to produce evidence to rebut the employer's evidence, or to establish that his work-related injury contributed to his subsequent wage loss. If the employee establishes that the medical restrictions resulting from the work-related injury prevent him from securing employment at pre-injury work levels, temporary disability benefits should be payable for the loss of earning capacity." 385 Ill. App. 3d at 1051-52 (Donovan, J., dissenting, joined by Holdridge, J.).

The dissenting justices would have set aside the Commission's decision and remanded the matter to the Commission "with instructions to afford the parties an opportunity to present additional evidence in accordance with the framework set forth in this decision." 385 Ill. App. 3d at 1053 (Donovan, J., dissenting, joined by Holdridge, J.).

We have reviewed the appellate court judgment and find that neither the majority nor the dissent has reached the correct conclusion on the issue before this court. It is important to remember that worker's compensation is a statutory remedy and the Workers'

Compensation Commission, as an administrative agency, is without general or common law powers. See *Flynn*, 211 Ill. 2d at 553; *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 525 (2006). Accordingly, a claimant's entitlement to TTD benefits is governed by the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2004)) and the Commission is limited to those powers granted by the legislature. *Cassens Transport Co.*, 218 Ill. 2d at 525. Any action taken by the Commission must be specifically authorized by statute. *Cassens Transport Co.*, 218 Ill. 2d at 525.

Looking to the Act, we find that no reasonable construction of its provisions supports a finding that TTD benefits may be denied an employee who remains injured, yet has been discharged by his employer for "volitional conduct" unrelated to his injury. A thorough examination of the Act reveals that it contains no provision for the denial, suspension, or termination of TTD benefits as a result of an employee's discharge by his employer. Nor does the Act condition TTD benefits on whether there has been "cause" for the employee's dismissal. Such an inquiry is foreign to the Illinois workers' compensation system.

The fundamental purpose of the Act is to provide injured workers with financial protection until they can return to the work force. *Flynn*, 211 Ill. 2d at 556. Therefore, when determining whether an employee is entitled to TTD benefits, the test is whether the employee remains temporarily totally disabled as a result of a work-related injury and whether the employee is capable of returning to the work force.

The Act provides incentive for the injured employee to strive toward recovery and the goal of returning to gainful employment by providing that TTD benefits may be suspended or terminated if the employee refuses to submit to medical, surgical, or hospital treatment essential to his recovery, or if the employee fails to cooperate in good faith with rehabilitation efforts. See 820 ILCS 305/19(d) (West 2004); *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397 (2005). Benefits may also be suspended or terminated if the employee refuses work falling within the physical restrictions prescribed by his doctor. See 820 ILCS 305/8(d) (West 2004); *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 166 (1992); *Hayden v. Industrial Comm'n*, 214 Ill. App. 3d 749 (1991) (TTD justifiably terminated by the employer, under the Act, when the injured employee was unwilling to cooperate

with vocational placement efforts). But none of these situations exist in this case.

The appellate court found that permitting the termination of benefits to an employee who is "justifiably" discharged "comports with the [position] taken in *Granite City* and *Schmidgall*." We disagree.

In *Schmidgall*, the claimant testified at his arbitration hearing that he was experiencing constant pain as a result of his work-related injury and his doctors had not released him to return to work. The Commission denied the claim for TTD benefits, however, concluding that the claimant, who had begun receiving social security pension benefits, was automatically precluded from simultaneously receiving workers' compensation benefits. *Schmidgall*, 268 Ill. App. 3d at 848. On appeal, the appellate court set aside the Commission's decision, holding that a worker is entitled to TTD benefits from the time an injury incapacitates the employee until such time as he is as far recovered as the character of the injury permits. *Schmidgall*, 268 Ill. App. 3d at 849. The court held that the claimant's receipt of social security benefits was not dispositive of his eligibility for TTD benefits. The court noted that the claimant was not receiving social security benefits because he had left the workforce, but because he had not been released by his doctor and could not work. Whether the claimant *desired* to work was deemed not relevant since he was not *physically capable* of working at that time. *Schmidgall*, 268 Ill. App. 3d at 849.

In *Granite City*, the appellate court considered whether the claimant was eligible to receive TTD benefits while simultaneously receiving disability pension benefits. The Commission had denied the claimant TTD benefits–not because it had decided, as a matter of policy, that a person could not simultaneously receive both workers' compensation benefits and disability pension benefits (*Granite City*, 279 Ill. App. 3d at 1090) but because the claimant was able to work. The claimant was a police officer who had returned to work after sustaining a work-related injury. Upon his return to work, he began receiving full benefits as a police officer, working 40 hours per week in a light-duty assignment within the limitations set by his doctor. The officer left this position to take a disability pension. The appellate court held that, in the absence of evidence–medical or otherwise–to show that the officer could not have continued working in the light-

-11-

duty position, his acceptance of a disability pension was tantamount to permanently removing himself from the work force. The court held that the duration of TTD benefits is controlled by the claimant's ability to work and his continuation in the healing process. *Granite City*, 279 Ill. App. 3d at 1090. The court further held that an employee has the burden of showing not only that he is not working, but that he *cannot* work. See also *Gallentine v. Industrial Comm'n*, 201 Ill. App. 3d 880, 887 (1990). Because the officer had presented no medical evidence to show that his condition had not stabilized or that he could not perform the light-duty assignment offered to him, the court found that the officer failed to prove his entitlement to TTD benefits. *Granite City*, 279 Ill. App. 3d at 1090-91.

In both *Schmidgall* and *Granite City*, the touchstone for determining whether the claimants were entitled to TTD benefits was not the voluntariness of their departure from the workforce, as the appellate court believed. Rather, the touchstone was whether the claimants' conditions had stabilized to the extent that they were able to reenter the work force.

The appellate court below believed that a discharged employee should be automatically barred from receiving TTD benefits because "allowing an employee to collect TTD benefits from his employer after he was removed from the work force as a result of volitional conduct unrelated to his injury would not advance the goal of compensating an employee for a work-related injury." 385 Ill. App. 3d at 1047. This logic, however, is faulty.

It is a well-settled principle that the Act is a remedial statute and should be liberally construed to effectuate its main purpose–providing financial protection for injured workers. *Flynn*, 211 Ill. 2d at 556. See also *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364 (2009) (the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers and it is to be liberally construed to accomplish that objective). In our view, the Act's purpose is not furthered by automatically denying TTD benefits to an injured employee simply because he has been discharged by his employer.

It remains the law in Illinois that an at-will employee may be discharged for any reason or no reason. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159 (1992). Whether an employee has been

discharged for a valid cause, or whether the discharge violates some public policy, are matters foreign to workers' compensation cases. An injured employee's entitlement to TTD benefits is a completely separate issue and may not be conditioned on the propriety of the discharge.

For the reasons stated above, we hold that an employer's obligation to pay TTD benefits to an injured employee does not cease because the employee had been discharged–whether or not the discharge was for "cause." When an injured employee has been discharged by his employer, the determinative inquiry for deciding entitlement to TTD benefits remains, as always, whether the claimant's condition has stabilized. If the injured employee is able to show that he continues to be temporarily totally disabled as a result of his work-related injury, the employee is entitled to TTD benefits.

In the case at bar, the Commission found that Urban's condition, which was the result of a work-related injury, had not stabilized, and that he had not yet reached maximum medical improvement. We agree with the appellate court that these factual finding by the Commission are not against the manifest weight of the evidence and are sufficiently supported by the evidence.

## CONCLUSION

The judgment of the appellate court is reversed. The decision of the Workers' Compensation Commission and its award of benefits to Urban are reinstated.

*Appellate court judgment reversed;*
*Commission decision reinstated.*

-13-