960 N.E.2d 583 (2011)
355 Ill. Dec. 701
OTTO BAUM COMPANY, INC., Appellant,
v.
ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Tim Hilton, Appellees).
No. 4-10-0959 WC.
Appellate Court of Illinois, Fourth District, Workers' Compensation Commission Division.
September 29, 2011.
*584 Karen L. Kendall, Brad A. Elward (argued), Bradford B. Ingram, Craig S. Young, Heyl, Royster, Voelker & Allen, Peoria, for Otto Baum Company, Inc.
Jean A. Swee (argued), William & Swee, Ltd., Bloomington, for Workers' Compensation Commission.

OPINION
Justice HOFFMAN delivered the judgment of the court, with opinion.
¶ 1 Otto Baum Company, Inc. (Otto), appeals from an order of the circuit court of McLean County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission) awarding the claimant 13 6/7 weeks of temporary total disability (TTD) benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2006)) for injuries he received while working on August 6, 2008. For the reasons that follow, we affirm the judgment of the circuit court.
¶ 2 The following factual recitation is taken from the record on appeal and the evidence presented at the arbitration hearing conducted on May 12, 2009.
¶ 3 The claimant, who worked as a laborer for Otto for several months but as a union laborer for seven years, was injured at work on August 6, 2008. He testified that he sought medical treatment soon after the injury and was taken off of work. On August 19, 2008, Dr. Grant Zehr examined the claimant before noting some improvement but concluding that the claimant could not yet return to work. On August 28, 2008, a magnetic resonance imaging (MRI) of the claimant's spine revealed disc bulges and degenerative changes. On that date, the claimant was cleared to return to work, with restrictions that he limit himself to sedentary duty. Also in late August, Otto's associate risk manager, Marc Collins, sent the claimant a letter offering him a temporary position within his work restrictions. The claimant testified that he reported for the offered work, but, on the second day, he exacerbated *585 his condition while trying to use a weed trimmer.
¶ 4 In his testimony, the claimant stated that he did not recall having any subsequent conversations with Collins regarding returning to work for Otto in a restricted capacity. Collins, however, testified that he contacted the claimant on September 2, 2008, to offer him light-duty work, but that the claimant told him that "he was blacking out because * * * his anti-depressants were mixing with whatever painkillers he was prescribed and he didn't want to drive over." Collins further recalled that, on September 9, the claimant declined another offer for light-duty work because it "hurt [him] to drive [his car]" the distance required for the commute.
¶ 5 By September 10, 2008, the claimant was still cleared to work but limited to sedentary duty; these restrictions were repeated on September 18.
¶ 6 On October 21, 2008, the claimant saw Dr. Paul Nord, his family physician, who took him off of work completely for one week. An October 27, 2008, treatment note from Dr. William Jhee states that the claimant's pain had exacerbated just prior to his visit.
¶ 7 The claimant testified that, on November 11, 2008, Dr. Nord cleared him for sedentary work and that he thereafter requested appropriate work from Otto, but that Otto did not offer him work then or at any time after. In his testimony, Collins stated that the claimant contacted him in late November or early December 2008, after he had obtained representation for his workers' compensation claim, to request work and that Collins responded by telling the claimant to make the request through his attorney. Collins testified that Otto was no longer offering the claimant work because the claimant had declined previous work offers.
¶ 8 The results of a December 8, 2008, functional capacity evaluation (FCE) revealed that the claimant was capable of light-medium to medium work, and that work hardening was recommended. The claimant testified that he did not complete work hardening due to difficulty paying for the service. Collins testified that he made sure that work hardening services were authorized for the claimant after they were recommended in December 2008.
¶ 9 On July 9, 2009, following a hearing conducted pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2006)), the arbitrator awarded the claimant TTD benefits for 3 3/7 weeks (from August 7 through August 25, 2008, and from October 23 through October 29, 2008) as well as medical expenses.
¶ 10 The claimant sought review of the arbitrator's decision before the Commission, which affirmed the arbitrator's decision but modified it to include a total of 13 6/7 weeks of TTD benefits, covering the dates cited by the arbitrator as well as the period from December 10, 2008, through February 18, 2009. In adding the December 10 through February 18 TTD benefits, the Commission found that the claimant had refused offers for light-duty work on September 2 and September 9, 2008, but that Otto denied the claimant's request for light-duty work in December 2008 because the claimant had refused work in the past. Additionally, the Commission remanded the case to the arbitrator for further proceedings pursuant to Thomas v. Industrial Comm'n, 78 Ill.2d 327, 35 Ill.Dec. 794, 399 N.E.2d 1322 (1980).
¶ 11 Otto filed a petition for judicial review of the Commission's decision in the circuit court of McLean County. The circuit court confirmed the Commission's decision, and this appeal followed.
*586 ¶ 12 Otto's only argument on appeal is that the Commission erred in awarding the claimant TTD benefits from December 2008 to February 2009 because the claimant had refused prior offers of employment within his medical restrictions. Otto urges us to apply a "clearly erroneous" standard of review, contending that the issues involved present mixed questions of law and fact. The claimant argues that the appropriate standard of review is manifest weight.
¶ 13 We apply a manifest weight standard when reviewing factual findings of the Commission. Parro v. Industrial Comm'n, 260 Ill.App.3d 551, 554, 196 Ill.Dec. 695, 630 N.E.2d 860, 863 (1993). Commission rulings on questions of law are reviewed de novo. Lenny Szarek, Inc. v. Illinois Workers' Compensation Comm'n, 396 Ill.App.3d 597, 603, 335 Ill.Dec. 522, 919 N.E.2d 43, 49 (2009). In City of Belvidere v. Illinois State Labor Relations Board, 181 Ill.2d 191, 204-05, 229 Ill.Dec. 522, 692 N.E.2d 295, 302 (1998), our supreme court first recognized a clearly erroneous standard applicable to the review of an administrative agency's decision involving a mixed question of law and fact. However, the supreme court has never applied this standard to an appeal involving a decision of the Workers' Compensation Commission. The last time the supreme court considered a claimant's entitlement to TTD benefits, in the case of Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n, 236 Ill.2d 132, 142, 337 Ill.Dec. 707, 923 N.E.2d 266, 272 (2010), decided several years after City of Belvidere, the court explained that "the period during which a claimant is temporarily totally disabled is a question of fact to be resolved by the Commission, whose determination will not be disturbed unless it is against the manifest weight of the evidence." But see Dodaro v. Illinois Workers' Compensation Comm'n, 403 Ill.App.3d 538, 543-45, 351 Ill.Dec. 100, 950 N.E.2d 256, 260-62 (2010) (applying clearly erroneous standard of review). Given the supreme court's approach to this issue, we will continue to apply the manifest weight standard to review of the Commission's determination of a claimant's entitlement to TTD benefits, unless and until the supreme court directs otherwise. Accordingly, we apply the manifest weight of the evidence standard to Otto's claim that the Commission erred in finding the claimant eligible for TTD for the period from December 10, 2008, through February 18, 2009. For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. Caterpillar, Inc. v. Industrial Comm'n, 228 Ill.App.3d 288, 291, 169 Ill.Dec. 390, 591 N.E.2d 894, 896 (1992).
¶ 14 "The fundamental purpose of the Act is to provide injured workers with financial protection until they can return to the work force." Interstate Scaffolding, Inc., 236 Ill.2d at 146, 337 Ill.Dec. 707, 923 N.E.2d at 274. "Therefore, when determining whether an employee is entitled to TTD benefits, the test is whether the employee remains temporarily totally disabled as a result of a work-related injury and whether the employee is capable of returning to the work force." Interstate Scaffolding, Inc., 236 Ill.2d at 146, 337 Ill.Dec. 707, 923 N.E.2d at 274. "The Act provides incentive for the injured employee to strive toward recovery and the goal of returning to gainful employment by providing that TTD benefits may be suspended or terminated if the employee refuses" medical services or fails to cooperate in good faith with rehabilitation efforts. Interstate Scaffolding, Inc., 236 Ill.2d at 146, 337 Ill.Dec. 707, 923 N.E.2d at 274 (citing 820 ILCS 305/19(d) (West 2004)). "Benefits may also be suspended or terminated *587 if the employee refuses work falling within the physical restrictions prescribed by his doctor." (Emphasis added.) Interstate Scaffolding, Inc., 236 Ill.2d at 146, 337 Ill.Dec. 707, 923 N.E.2d at 274 (citing Hartlein v. Illinois Power Co., 151 Ill.2d 142, 166, 176 Ill.Dec. 22, 601 N.E.2d 720, 731 (1992), and Hayden v. Industrial Comm'n, 214 Ill.App.3d 749, 158 Ill.Dec. 305, 574 N.E.2d 99 (1991)).
¶ 15 We agree with Otto that a claimant's improper refusal of modified work may justify the termination of his TTD benefits. However, as indicated, the Commission has discretion to terminate or suspend benefits in response to a claimant's refusal to accept work within his restrictions. Here, the Commission considered the evidence of the claimant's refusal to work in September 2008 and awarded him TTD benefits for only the period preceding and following his refusal. We must infer from the Commission's decision that the Commission considered, and rejected, the possibility that the claimant's refusal was so unjustified as to warrant termination of his TTD benefits, yet determined that the claimant's refusal justified a suspension of his benefits for the time that he refused work. That approach has sufficient support in the record. Although Otto presented evidence that it stood ready to accommodate the claimant and that he nonetheless refused work in September, the Commission was also presented with evidence that the claimant eventually submitted himself for work in December 2008 and that Otto refused to accommodate the claimant at that time. Given that evidence, we cannot say that it was clearly apparent that the claimant was not entitled to the TTD benefits for the period from December 10, 2008, through February 18, 2009, nor can we say that the Commission abused its discretion in suspending his benefits rather than terminating his benefits due to his failure to accept work in September 2008.
¶ 16 Based upon the foregoing analysis, we affirm the circuit court's decision to confirm the Commission's decision awarding the claimant 13 6/7 weeks of TTD benefits, and remand the matter to the Commission for further proceedings.
¶ 17 Affirmed and remanded to the Commission.
Presiding Justice McCULLOUGH and Justices HUDSON, HOLDRIDGE and STEWART concurred in the judgment and opinion.