# Illinois Official Reports

## Appellate Court

---

### *Dig Right In Landscaping v. Illinois Workers' Compensation Comm'n*,
### 2014 IL App (1st) 130410WC

---

| | |
|---|---|
| Appellate Court Caption | DIG RIGHT IN LANDSCAPING, Appellee, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jose Nunez, Appellant). |
| District & No. | First District, Workers' Compensation Commission Division Docket No. 1-13-0410WC |
| Filed | July 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a workers' compensation claim where the arbitrator initially denied the claim, the Workers' Compensation Commission reversed the arbitrator's decision, and the trial court reinstated the arbitrator's decision, the appellate court reversed the trial court and reinstated the Commission's award of benefits based on the determination that the Commission's finding that the claimant's condition of ill-being was causally related to his employment was not contrary to the manifest weight of the evidence, even though the Commission did not expressly find claimant credible, since the Commission found that there was credible medical evidence supporting causation, and the Commission's description of claimant's testimony clearly indicated that it found him to be credible. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-50882; the Hon. Margaret Brennan, Judge, presiding. |
| Judgment | Circuit court reversed and Commission decision reinstated; cause remanded to the Commission for further proceedings. |

Counsel on
Appeal

Joshua E. Rudolfi and Howard H. Hankin, both of Ankin Law Office, LLC, of Chicago, for appellant.

Jigar S. Desai, of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellee.

Panel

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Hoffman, Hudson, Harris, and Stewart concurred in the judgment and opinion.

## OPINION

¶ 1      The claimant, Jose Nunez, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2010)), seeking benefits for right shoulder injuries which he allegedly sustained while working for Dig Right In Landscaping (employer). After a section 19(b) hearing, the arbitrator found that the claimant's current condition of ill-being of his right shoulder was not causally related to his employment. The arbitrator denied the claim for benefits. The claimant sought review before the Illinois Workers' Compensation Commission (Commission), which reversed the decision of the arbitrator and awarded the claimant temporary total disability (TTD) benefits, reasonable and necessary medical expenses, and prospective medical care. The employer then sought judicial review of the Commission's decision in the circuit court of Cook County. The circuit court found that the Commission's decision was against the manifest weight of the evidence and reinstated the arbitrator's award. The claimant then filed a timely appeal with this court.

¶ 2      On appeal, the claimant maintains that the Commission's finding that his current condition of ill-being was causally related to his employment was not against the manifest weight of the evidence. He asks this court to reverse the order of the circuit court and reinstate the Commission's decision.

¶ 3                          FACTS

¶ 4      The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on May 13, 2011. The evidence included the testimony of the claimant and the claimant's written medical records.

¶ 5      On July 14, 2008, the claimant was working as a laborer/driver for the employer. It was the claimant's testimony that he sustained an injury to his right shoulder while loading a piece of equipment onto a truck.

¶ 6      The following day the claimant sought treatment from Dr. Manish Pandya, a chiropractor. According to Dr. Pandya's treatment records, the claimant gave a history of injury to the right

shoulder while lifting an object weighing approximately 20 to 40 pounds. The claimant complained of right shoulder pain rated as 8 on a scale of 1 to 10, with 10 being extreme pain. The records recorded no history of the claimant reporting a "pop" or popping sensation in his shoulder. Dr. Pandya diagnosed subluxation of the thoracic spine and rotator cuff syndrome. The claimant treated with Dr. Pandya again on July 16 and July 18, 2008, at which time he complained of both right shoulder pain and neck stiffness. Dr. Pandya diagnosed mild discomfort upon palpitation of the spine in the thoracic region and moderate spasm in the neck. Dr. Pandya recommended trigger-point therapy and an ultrasound of the right shoulder. The claimant did not treat with Dr. Pandya after July 18, 2008.

¶ 7 On July 22, 2008, the claimant sought treatment from Dr. Ehteshan Ghani, a general practitioner. Dr. Ghani's treatment notes report that the claimant gave a history of injuring himself while loading a cultivator onto a truck. Dr. Ghani diagnosed shoulder pain, prescribed Celebrex and entered a notation in his treatment records to "consider MRI." He released the claimant to return to work with a restriction of no lifting of more than five pounds with the right arm, and no repetitive pushing or pulling with the right hand.

¶ 8 The record established that the employer was able to accommodate the work restrictions imposed by Dr. Ghani. The claimant did not lose any time from work as a result of the July 14, 2008, accident.

¶ 9 The claimant was examined again by Dr. Ghani on July 28, 2008, and August 5, 2008. The claimant reported some improvement in shoulder pain at the July 28 examination and a 75% improvement at the August 5 examination. Dr. Ghani reiterated the previous restrictions. The August 5 examination was the last time the claimant treated with Dr. Ghani.

¶ 10 On August 12, 2008, the claimant sustained several laceration injuries to his left hand in a work-related accident. He was treated by Dr. Hasan Kahn at LaGrange Medical Center. Dr. Kahn's treatment records indicated that the claimant gave a medical history of diabetes, but made no mention of right shoulder pain or the July 14, 2008, accident. Dr. Kahn released the claimant with a restriction of no lifting of greater than 20 pounds with the left hand. The claimant testified that he was able to work thereafter within the restrictions for both his left hand and his right shoulder.

¶ 11 The claimant continued to treat for his left hand injury at LaGrange Medical Center from August 12, 2008, through October 6, 2008, at which time he was released to return to work without any restrictions. The LaGrange Medical Center records list no complaints of right shoulder pain or any restrictions related to the right shoulder during the time the claimant treated there.

¶ 12 On September 10, 2008, while he was still treating at LaGrange Medical Center for his left hand injury, the claimant was terminated for cause. Unrebutted testimony from the employer established that the claimant was terminated for performing unauthorized "side jobs" using company equipment. The employer's representative further testified that the employer was not aware of any right shoulder complaints at the time of the claimant's termination. The record also established that, at the time he was terminated, the claimant made no requests for medical treatment or TTD benefits related to his right shoulder. The claimant claimed to have contacted the employer's workers' compensation insurance adjuster but he could not recall when he made this contact or what he said to the adjuster.

¶ 13 On March 26, 2009, the claimant sought treatment for right shoulder pain at St. Anthony's hospital. He gave a history of a backward fall six months previously (*i.e.*, approximately

September of 2008). He reported intermittent right shoulder pain, rating his pain level as 8 out of 10. Treatment notes from the hospital indicated no observable deformity, bruising, swelling, hematoma, or tenderness to palpitation in the right shoulder. The claimant was given ibuprofen and referred to Dr. Mitchell Goldfleis, an orthopedic surgeon. The claimant never consulted with Dr. Goldflies. He testified that he was unable to follow up with Dr. Goldflies due to a lack of money or insurance.

¶ 14 On July 1, 2009, the claimant filed an application for adjustment of claim regarding the July 14, 2008, accident. On the recommendation of his attorney, the claimant sought treatment from Dr. William Vitello, a board-certified orthopedic surgeon. Dr. Vitello first examined the claimant on July 6, 2009. According to Dr. Vitello's treatment notes, the claimant gave a history of injuring his right shoulder while falling backwards after putting away a shovel on July 22, 2008. The claimant denied giving a history of falling while putting away a shovel and maintained that he gave a history of injury while loading a cultivator onto a truck. The claimant reported a pain level of 10 on the 1-to-10 scale and an inability to sleep at night due to the pain. Dr. Vitello ordered an X-ray of the right shoulder. The X-ray appeared normal to Dr. Vitello. Dr. Vitello diagnosed a possible rotator cuff tear and placed the claimant on a restriction of lifting no more than 10 pounds with his right arm.

¶ 15 On August 12, 2009, Dr. Vitello ordered an MR arthrogram of the right shoulder, which revealed no acute pathology and no evidence of a rotator cuff tear. The test did reveal a degenerative impingement of the right clavicle joint. Dr. Vitello administered a pain injection in the right shoulder and prescribed a course of physical therapy.

¶ 16 On November 11, 2009, Dr. Vitello reexamined the claimant's right shoulder. The claimant reported that the pain injection provided only temporary relief. Dr. Vitello observed that the claimant had participated in physical therapy from August 19, 2009, to October 9, 2009, with no reduction in shoulder pain. Based on the claimant's lack of improvement following physical therapy, Dr. Vitello recommended arthroscopic surgery on the right shoulder.

¶ 17 On November 23, 2009, the claimant was examined at the request of the employer by Dr. Jay Levin, a board-certified orthopedic surgeon. The claimant gave a history of injuring his right shoulder in a fall. He reported feeling a "pop" in his shoulder at the time he fell. He further complained of constant pain in his right shoulder with a pain rating of 10 out of 10. Dr. Levin observed no objective signs of acute distress. He noted from the claimant's medical records that he continued to work from July 14, 2008, until August 5, 2008, at which time he reported 75% improvement. After reviewing the claimant's medical records, Dr. Levin diagnosed mild right shoulder subacromial bursitis. He opined that the claimant's current condition of ill-being was not causally related to an employment related accident on July 14, 2008. Dr. Levin further opined that the claimant's condition had resolved by August 2008, and he was able work without restriction after that date.

¶ 18 On December 23, 2009, the claimant was again examined by Dr. Vitello, who continued to recommend surgery.

¶ 19 On June 14, 2010, Dr. Vitello issued a written report in which he diagnosed right shoulder impingement. He recommended right shoulder arthroscopy, subacromial decompression and debridement. He opined that the claimant's current condition of ill-being of the right shoulder was causally related to the July 2008 industrial accident.

- 4 -

¶ 20 Following the hearing, the arbitrator found that the claimant had failed to establish that his current condition of ill-being was causally related to the industrial accident on July 14, 2008. The arbitrator pointed out that: (1) after August 5, 2008, the claimant made no reports of right shoulder pain to his employer and received no treatment for right shoulder pain until March 26, 2009; (2) even when his employment was terminated on September 10, 2008, the claimant did not report that he still had right shoulder pain; (3) no medical records from August 12, 2008, through October 6, 2008, had any notations regarding reported shoulder pain; and (4) from August 5, 2008, to September 10, 2008, the claimant worked under a restriction against the use of his left arm, relying entirely on the use of his right arm. The arbitrator noted that "[c]learly, if the [claimant] was placed on restrictions of no use of the *left* hand, and he had continuing complaints of the *right* arm and still had restrictions, he would have been taken off work completely. He was not." (Emphases added.)

¶ 21 The claimant sought review before the Commission, which rejected the arbitrator's findings and issued an award of benefits to the claimant. The Commission noted that claimant sought medical treatment for right shoulder pain immediately following the July 14, 2008, accident. The Commission further noted that the claimant had consistently reported right shoulder pain after the accident and had been given pain medication on several occasions thereafter. It also noted that at the time of his termination for cause, the claimant was still under a work restriction limiting the use of his right arm due to the reported shoulder pain. The Commission found Dr. Vitello's causation opinion credible and persuasive. While the Commission made no express determination regarding the claimant's credibility, it implicitly found the claimant credible when it noted without negative comment his testimony that prior to July 14, 2008, he had suffered no right shoulder pain, but had experienced continual pain since that date. Finally, the Commission found it significant that the claimant was still on light duty for his right shoulder injury when the employer terminated him for cause. The Commission noted that termination of employment for cause does not terminate a claimant's eligibility for TTD benefits. *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 146 (2010). The Commission awarded the claimant TTD benefits from September 11, 2008, through March 26, 2009, and from July 6, 2009, through May 13, 2011, which was the date of the arbitration hearing. It further ordered payment of all medical expenses related to the claimant's right shoulder condition, and it awarded prospective medical expenses for the right shoulder surgery and postsurgical treatment as recommended by Dr. Vitello.

¶ 22 The employer sought judicial review of the Commission's decision in the circuit court of Cook County. On March 5, 2013, the circuit court set aside the Commission's decision and reinstated the decision of the arbitrator. The circuit court explained that the Commission improperly relied upon Dr. Vitello's opinion that the claimant's right shoulder pathology was caused by the July 14, 2008, workplace accident. The court stated that the Commission failed to state the basis for its credibility determinations regarding the claimant and his treating doctors and failed to consider that the claimant reported 75% improvement in his shoulder condition approximately two weeks after the accident. The court also found that Dr. Vitello's causation opinion was based upon uncorroborated and unreliable medical history given to him by the claimant. The court particularly noted that the claimant gave several versions of when and how the shoulder injury occurred. Additionally, the court noted that the claimant went seven months without any treatment, yet reported his pain level as 8 or 10 out of 10. The

claimant now appeals, arguing that the Commission's award of benefits was not against the manifest weight of the evidence.

¶ 23                                    ANALYSIS

¶ 24     Neither party has questioned the court's jurisdiction to review the Commission's decision in this case. It is our obligation, however, to consider, *sua sponte*, matters which related to the subject matter jurisdiction over final decisions of the Commission. *Consolidated Freightways v. Illinois Workers' Compensation Comm'n*, 373 Ill. App. 3d 1077, 1079 (2007). Moreover, subject matter jurisdiction cannot be waived, stipulated to, or consented to by the parties, and the failure of a party to object to the lack of subject matter jurisdiction cannot confer jurisdiction upon the court. *Supreme Catering v. Illinois Workers' Compensation Comm'n*, 2012 IL App (1st) 111220WC, ¶ 7.

¶ 25     The record in this matter contains a decision and award of benefits to the claimant signed by only two commissioners. Section 19(e) of the Act provides in pertinent part: "In the event either party requests oral argument, such argument shall be had before a panel of 3 members of the Commission ***. *** A decision of the Commission shall be approved by a majority of Commissioners present at such hearing ***." 820 ILCS 305/19(e) (West 2010). While it is a jurisdictional requirement that three commissioners form a panel to hear oral arguments and a majority of that panel approve the resulting order, the writing and filing of the Commission's order is a ministerial act and does not impact the jurisdictional validity of the Commission's ruling. *Zeigler v. Industrial Comm'n*, 51 Ill. 2d 137, 142 (1972); *Morton's of Chicago v. Industrial Comm'n*, 366 Ill. App. 3d 1056, 1062-63 (2006). In this case, the record sufficiently established that oral argument was requested and had before a panel of three commissioners. However, at the time the Commission's decision was issued, the term of one of the Commissioners had expired. Since the remaining two commissioners who heard the oral argument were able to agree upon a disposition and signed the Commission's order, the record is clear that a majority of the panel hearing the argument approved the resulting order. Had the two panel members not been in agreement, it would have been necessary for a replacement commissioner to concur with the decision of one of the commissioners who was present at the oral argument. *Zeigler*, 51 Ill. 2d at 142. That procedure was not necessary in this case. The fact that the order herein is signed by only two commissioners, therefore, does not impact the validity of the order in this matter. We find that we have subject matter jurisdiction over this appeal.

¶ 26     Turning to the merits of the appeal, the claimant argues that the Commission correctly found that he proved a causal connection between July 14, 2008, and his current condition of ill-being. He contends that the Commission correctly placed more weight on the opinion of Dr. Vitello and that it sufficiently weighed his credibility in light of the medical evidence. The employer counters that the Commission's decision was against the manifest weight of the evidence because the medical evidence clearly established that his shoulder condition had completely resolved by August 2008 as reported by Dr. Levin. Although this is a close case, we agree with the claimant and find that the Commission's award of benefits was not against the manifest weight of the evidence.

¶ 27     In a workers' compensation case, the claimant has the burden of proving, by a preponderance of the evidence, all of the elements of his claim. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980). Whether a causal relationship exists between a claimant's

employment and his injury is a question of fact to be resolved by the Commission, and its resolution of such a matter will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244 (1984). In resolving such issues, it is the function of the Commission to decide questions of fact, judge the credibility of witnesses, and resolve conflicting medical evidence. *O'Dette*, 79 Ill. 2d at 253. For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Whether a reviewing court might reach the same conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982). Although we are reluctant to set aside the Commission's decision on a factual question, we will not hesitate to do so when the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion. *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill. App. 3d 563, 567 (1993).

¶ 28     In this case, the Commission's finding that the claimant's right shoulder pain and need for surgery was causally connected to his workplace accident is not against the manifest weight of the evidence. The Commission based its decision on: (1) Dr. Vitello's opinion that the claimant's right shoulder impingement manifested itself only after the July 14, 2008, accident; (2) the fact that the claimant's reports of right shoulder pain were consistent from the time of the accident until the date of the hearing; and (3) despite the fact that the claimant reported a 75% improvement within approximately two weeks after the accident he still was on a significant work restriction regarding his right shoulder when he was terminated for cause on September 10, 2008.

¶ 29     The Commission's award of benefits in this matter is based primarily upon its determination that the claimant's description of his symptoms to his treating physicians, particularly Dr. Vitello, was credible. We note that the circuit court found that the claimant was completely lacking in credibility, and that lack of credibility made Dr. Vitello's causation opinion unreliable according to the circuit court. It is well settled, however, that while a reviewing court may view the credibility of the claimant differently than did the Commission, it is the exclusive function of the Commission to judge credibility and assign weight to medical opinion testimony. *O'Dette*, 79 Ill. 2d at 253. Here, while the claimant's testimony and descriptions of the accident appear to be less than precise, the fact remains that he gave the same history and pain descriptions to both Dr. Vitello and Dr. Levin. Moreover, while it appears that there were no recorded reports of right shoulder pain while the claimant was treating for his left hand injury, the Commission correctly noted that on the last day of his employment, September 10, 2008, the claimant was working under a severe lifting restriction imposed by Dr. Ghani relative to the claimant's right shoulder and there is no record that the restriction was ever lifted. Based on this evidence, and the inferences reasonably drawn from the evidence, the Commission's finding that the claimant's right shoulder impingement neuropathy was causally connected to his workplace accident of July 14, 2008, was not against the manifest weight of the evidence.

¶ 30     Since the Commission's finding that the claimant was entitled to TTD and medical benefits for injuries sustained in a work-related accident on July 14, 2008, was not against the manifest weight of the evidence, we reverse the circuit court's judgment and affirm the Commission's

award. The matter is remanded to the Commission for further proceedings consistent with this decision.

¶ 31                                                   CONCLUSION

¶ 32        The Commission's finding that the claimant's current condition of ill-being is causally related to his employment is not contrary to the manifest weight of the evidence. The Commission found credible medical evidence supporting causation, and while it did not expressly find the claimant credible, the Commission's description of his testimony makes it clear that it found him credible. We therefore reverse the judgment of the circuit court, affirm the decision of the Commission and remand the matter to the Commission for further proceedings.

¶ 33        Circuit court reversed and Commission decision reinstated; cause remanded to the Commission for further proceedings.